# Richmond

## D. L. JORDAN V. COMMONWEALTH OF VIRGINIA.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*J. Lorenzo Rainey* and *T. W. Fisher,* for the plaintiff in error.

*Abram P. Staples, Attorney-General* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

The accused, D. L. Jordan, was indicted for rape by force and violence. He was tried, convicted by a jury, and sentenced to the penitentiary for five years, the minimum sentence fixed by statute.

There are several assignments of error; but in the view we take of the case, the only assignment we need to consider is, that the verdict of the jury should be set aside because it is contrary to the law and the evidence and without sufficient evidence to support it.

A summary of the evidence is certified to us in narrative form. It shows that the prosecutrix is a negro girl, eighteen years of age. She was living in the home of her married sister and her husband, and taking post-graduate work in a

city high school. The accused was a negro man, twenty-six years old, a graduate of a high school, temporarily engaged in work to get funds to complete his fourth and final year at college. He had been living in the house of the sister of the prosecutrix for three weeks prior to the alleged offense, and had formerly lived there for a much longer time. The man and the girl each bore a good reputation.

The prosecutrix occupied a room next to that occupied by the accused, with a door opening between the two rooms. The sister of the prosecutrix and her husband occupied a front room adjoining that of the accused, with no door between these two rooms. Each of the three rooms had a door opening into a hall or corridor.

The prosecutrix testified that while she was on friendly terms with the accused, she had never been out with him; that on the night of December 25, 1936, after she had retired, and had been asleep for sometime, she awakened to find Jordan in bed with her; that she did not know how he was dressed; that he told her if she made an outcry, he would kill her; that he stayed in bed with her for an hour, during which time he had intercourse with her; that she did not make an outcry because she was afraid he would do her bodily harm; that she did not consent to the intercourse and was in great pain during that time; that the next morning when she went downstairs, she saw her sister and Jordan, and that after Jordan had left, she told her sister of the occurrence, who took her to a physician for an examination; and that she had never before had such intercourse, and had never had any conversation with Jordan about an act of this kind.

The physician testified that when he called at the girl's home on December 26th, for the purpose of treating her, he met Jordan coming out of the door of the home; that he advised him not to go back therein, but to go to the physician's office, where he would talk to him later; that he examined the girl, and found no bruises except as incident to intercourse with a virgin, and that such "condition could have been the same with normal intercourse"; that when he

saw Jordan in his office that day, the latter did not admit the intercourse; and that he advised Jordan to leave the city, at the suggestion of the girl's sister, because she did not wish to have any notoriety about the matter.

Jordan testified that when he came home on Christmas night about twelve o'clock, he found the door between his room and that occupied by the prosecutrix open; that he had talked with her about this matter the night before when they were fixing a Christmas tree downstairs; that he removed his clothes and put on his pajamas, and went into her room, awakened her, and asked her whether she wanted him to get in the bed to keep her warm; that when she replied "she didn't care," he got in bed with her, and "after playing with her a while he undertook to have intercourse with her"; that he stopped after he found some difficulty in fully consummating the act; that she did not tell him to stop, nor raise any objection thereto, and that he believed the difficulty in performing the act was due to the fact that the girl had not been accustomed to the practice; that he had not threatened her and that he had no reason to do so; that after a while he went back into his room and closed the door; that in the morning between four and five o'clock, the brother-in-law of the prosecutrix and some of her relatives, who were passing through the hall, stopped, went into her room, and talked with her; that at the time of the act, and afterwards, her sister and brother-in-law were in their room; that the next morning he saw the prosecutrix in the living room downstairs; that he spoke to her and she spoke to him; that he ate his breakfast and left, and did not know of the charge against him until the physician told him about it the night afterwards; that two or three days later he learned that there was a warrant out for him; and that he did not leave town, but went over to the police station and surrendered, and made no statement except that he did not commit rape.

The conviction rests solely upon the testimony of the prosecutrix. She was of sound mind, unusually well educated and informed for one of her race. It is highly sig-

nificant that she fails to show that she made any protest, or any resistance by words or acts. There is no contradiction of the circumstance that the door was left open between her room and that of the accused. She made no outcry at the sudden appearance of a man in her bed, nor of the pain complained of, although members of her family were in close proximity. She did not arise after her visitor left, but apparently returned to slumber, and made no outcry at the time of the early morning visit of her relatives. Nor did she make any disclosure to her sister the next morning until after the accused had gotten his breakfast and left. The significance of the disclosure then is weakened by the circumstance that in seeking medical aid she could not conceal what had taken place. There is no evidence of torn clothes, nor of any physical injury incidental to the use of force to overcome resistance. There was nothing in her outward manner and appearance to inform her family of her experience.

All of the above circumstances, and her failure to controvert the material statements of the accused, taken in connection with his testimony, and his action in not fleeing from the charge, make her evidence, to say the least of it, doubtful and inconclusive. In the absence of contradiction, the evidence of the accused is explanatory of the surrounding circumstances, and negatives both the use of force and any resistance on the part of the prosecutrix.

The evidence is such as to repel the conclusion that the act was committed by force. It does not warrant the belief beyond a reasonable doubt that the accused had sexual intercourse with her against her will.

The act to constitute rape must have been committed both by force and against the will of the victim. Both elements are essential ingredients of the crime.

There must be some array or show of force, or an intention on the part of the accused to use force, if it should become necessary to overcome the will of the victim. In whatever form, actual or constructive, it must be force sufficient to overcome resistance. *Bailey* v. *Commonwealth*,

82 Va. 107, 3 Am. St. Rep. 87; *Mings* v. *Commonwealth,* 85 Va. 638, 8 S. E. 474; *Hairston* v. *Commonwealth,* 97 Va. 754, 32 S. E. 797; *Broaddus* v. *Commonwealth,* 126 Va. 733, 101 S. E. 321.

Against the will means in opposition to the will. Such opposition is evidenced by a protest, which may be by words or acts. Neither a withheld objection, nor silent acquiescence, is consistent with opposition. Where the female is of the age of consent, of sound mind and without physical disability, resistance should be by acts reasonably appropriate to the strength and opportunities of the woman. Where there is a lack of resistance, there is small occasion to use force. *Vance* v. *Commonwealth,* 155 Va. 1028, 154 S. E. 512; *Grinnelle* v. *Commonwealth,* 157 Va. 915, 161 S. E. 888; 22 R. C. L. 1180, 1181.

The evidence being insufficient to sustain the verdict, the judgment of the trial court is reversed, the verdict of the jury set aside, and the Commonwealth having apparently fully developed its evidence, the case is remanded to the trial court with direction to dismiss the accused from further prosecution under this indictment.

*Reversed.*