COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Humphreys
Argued at Richmond, Virginia


JAMES DARREN WACTOR
                                              OPINION BY
v.   Record No. 1026-01-2          JUDGE ROSEMARIE ANNUNZIATA
                                            MAY 28, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
               David F. Berry, Judge Designate

          Llezelle Agustin Dugger, Assistant Public
          Defender, for appellant.

          Amy L. Marshall, Assistant Attorney General
          (Randolph A. Beales, Attorney General, on
          brief), for appellee.


     James Darren Wactor was convicted by a jury of object

sexual vaginal penetration, in violation of Code § 18.2-67.2.

The circuit court sentenced the defendant to five years in

prison in accordance with the jury's verdict.  Wactor contends

the evidence was insufficient to support his conviction.  For

the reasons that follow, we affirm.

## Background

     In November of 1999, Tina Dudley, a twenty-three-year-old

woman suffering from cerebral palsy, severely injured her leg in

an automobile accident.  After a short stay in the hospital, she

was admitted to Eldercare Gardens for physical rehabilitation. Her discharge was set for January 21, 2000.

On January 20, 2000, Dudley was so excited about her imminent release, she decided to sleep in her street clothes. Angela Saylor, a Certified Nursing Assistant (CNA), checked on Dudley at about 10:30 p.m. Saylor offered to help Dudley change into her nightclothes but Dudley declined the offer because she wanted to be ready to leave the next morning.

Kelly Diaz, also a CNA, began her shift at 11:00 p.m. She was assigned to Dudley's room. When she checked on Dudley, she also offered to help her change her clothes. Dudley again refused.

Later that evening, Dudley rang the nurse's bell for assistance. Her physical condition prevented her from repositioning herself in bed. Wactor answered the call, although he was not assigned to her room. After repositioning Dudley in her bed, he, too, offered to help change her clothes. Again, she declined. When Wactor pressed her again to change her clothes, Dudley agreed.

While changing her clothes, Wactor told Dudley that she "needed to be cleaned." The statement did not strike Dudley as unusual because her medication at times caused her to have an involuntary and unperceived bowel movement. Wactor removed her clothes and placed Dudley on her side. He put on gloves and

-

wrapped his hand in a towel.  While Dudley was lying on her side, Wactor cleaned her "bottom."  Dudley felt pressure on her "bottom" and then inside her rectum.  When Wactor finished "cleaning" her, he threw the towel on the floor; Dudley noticed it was clean.

Wactor then asked Dudley for a hug.  Assuming an innocent and amicable motive, Dudley complied.  However, to Dudley's surprise, during the hug, Wactor asked, "would you suck my dick?"  "[H]e took his hand and he slid it up under [her] gown and [she felt] pressure in [her] vagina."  He kept his fingers inside her vagina for about three to four minutes.  She was "so shocked [she] couldn't say anything."  Before leaving, he said, "If you feel it in your mouth, don't bite it."  Still in shock, she again said nothing.  Wactor left, stating that he would return to "take [her] vitals."

Dudley was so afraid Wactor would return that she refrained from using the call button to signal her need for help.  After a few minutes, she telephoned her friend and CNA nurse, Angela Saylor.  Dudley was upset and her crying made it difficult for Saylor to understand her.  Dudley asked Saylor how she could report something that "shouldn't have been done."  Saylor, realizing that something was seriously wrong, notified Linda Leap, the director of nurses.  Leap and another nurse on duty came to Dudley's room and found her crying.  Dudley told the

-

nurses what had occurred and expressed her fear that Wactor would return.

When Leap confronted Wactor with the accusations, he denied doing anything improper to Dudley. Dudley's fears were relieved after Leap asked Wactor to leave for the evening.

Wactor claimed he changed Dudley's clothes because she smelled of urine. However, Diaz, the nurse responsible for Dudley, did not find her soiled or smelling of urine when she checked on Dudley just minutes earlier. Moreover, no evidence of blood, stool, or urine was found on the bed linens after the incident.

In addition, Dudley had been fitted with an ileostomy bag through which an ileal conduit was connected directly to her bladder. The bag is designed to empty the patient's bladder without urination. When Diaz checked on Dudley, the bag was in working order. It was also intact when Leap checked it after the incident. Furthermore, had it not been properly operating, urine would have leaked onto the floor, not on Dudley's vaginal area. Diaz, a CNA, testified that a nurse would never need to clean a patient with an ileostomy bag inside their vagina or rectum.

## Analysis

Wactor contends the evidence at trial was insufficient to prove that he committed object sexual penetration.

-

Specifically, he argues that the Commonwealth failed to prove that he accomplished the act by force, threat or intimidation or that the victim was physically helpless. For the following reasons, we disagree and affirm Wactor's conviction.

When the sufficiency of the evidence is challenged on appeal, "[w]e view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence." Cooper v. Commonwealth, 31 Va. App. 643, 646, 525 S.E.2d 72, 73 (2000). The appellate court must, therefore, "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn" from the credible evidence. Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998). The credibility of the witnesses and the weight of the evidence are matters to be determined solely by the trier of fact. Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989). Furthermore, the decision of the trial court will not be disturbed unless plainly wrong or without evidence to support it. McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). "If there is evidence to support the conviction," we will not substitute our judgment for that of the trier of fact, even were our opinion to

-

differ.  Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d

72, 72 (1998).

A conviction for object sexual penetration requires proof

that the defendant:

> Penetrate[d] the labia majora or anus of a
> complaining witness who is not his
> . . . spouse with any object . . . [and that
> the act was] accomplished against the will
> of the complaining witness, by force,
> threat, or intimidation . . . or through the
> use of the complaining witness's mental
> incapacity or physical helplessness.

Code § 18.2-67.2(A).  Whether the act was accomplished by

"force, threat, or intimidation" is ordinarily a question for

the fact finder.  Snyder v. Commonwealth, 220 Va. 792, 796, 263

S.E.2d 55, 58 (1980).

Object sexual penetration may be analogized to the crimes

of rape (Code § 18.2-61), forcible sodomy (Code § 18.2-67.1),

aggravated sexual battery (Code § 18.2-67.3), and sexual battery

(Code § 18.2-67.4), in that each offense requires proof of

"force, threat, or intimidation" or "mental incapacity" or

"physical helplessness."  Therefore, cases interpreting these

sections of the code are useful in discerning the meaning and

intent of Code § 18.2-67.2.  See First Nat'l Bank v. Holland, 99

Va. 495, 504, 39 S.E. 126, 129-30 (1901) (holding that the Code

of Virginia constitutes a single body of law and, therefore,

-

related sections can be looked to for interpretation of a section where the same phraseology is used).

The evidence at trial supports the conclusion that Wactor used sufficient force to overcome Dudley's will in order to accomplish the unlawful touching. To determine whether a defendant has employed the requisite force to support a conviction for object sexual penetration, "the inquiry is whether the act or acts were effected with or without the victim's consent." Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979). "Wherever there is a carnal connection, and no consent in fact, . . . there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime." Bailey v. Commonwealth, 82 Va. 107, 111 (1886); accord Mings v. Commonwealth, 85 Va. 638, 640, 8 S.E. 474, 475 (1889) (quoting 2 Bish. Crim. Law. § 1078). Hence, the force used by the defendant must be sufficient to accomplish the act as well as to overcome the will of the victim. Johnson v. Commonwealth, 5 Va. App. 529, 534, 365 S.E.2d 237, 240 (1988) (holding that a conviction for sexual battery requires proof of "some force . . . to overcome the will of the complaining witness"). To overcome the victim's will, the force must be "sufficient to overcome [her] resistance . . . . " Snyder, 220 Va. at 796, 263 S.E.2d at 57; Davis v. Commonwealth, 186 Va. 936, 946, 45 S.E.2d 167, 171 (1947); Jordan v. Commonwealth, 169

-

Va. 898, 902, 194 S.E. 719, 720 (1938); Mings, 85 Va. at 640, 8

S.E. at 475; Bailey, 82 Va. at 111.[1]

The degree of resistance by the victim and, consequently, the degree of force required to overcome her will, "necessarily depend[] on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested."  Jones, 219 Va. at 986, 252 S.E.2d at 372 (citing Bradley v. Commonwealth, 196 Va. 1126, 1135, 86 S.E.2d 828, 833 (1955)); accord Mings, 85 Va. at 639-40, 8 S.E. at 475; Bailey, 82 Va. at 111.[2]  "Indeed,

_____

[1] Defendant argues that the Virginia Supreme Court cases cited herein are inapplicable because they were decided before the enactment of the statute.  We disagree.  Before 1981, crimes of sexual assault required a showing of force.  See Snyder, 220 Va. at 796, 263 S.E.2d at 57; Davis, 186 Va. at 946, 45 S.E.2d at 171; Jordan, 169 Va. at 902, 194 S.E. at 720; Mings, 85 Va. at 640, 8 S.E. at 475.  Threats or intimidation of the victim were not legally relevant in establishing the crime of rape.  By adding threat or intimidation as means sufficient to prove sexual assault crimes in 1981, the legislature intended to expand, rather than restrict, the parameters of the crimes.  See Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 669 (1985) (noting that the legislature's intent in including "a prohibition against sexual intercourse with a woman against her will by threat or intimidation [in Code § 18.2-61], was to expand the parameters of rape").  The Virginia Supreme Court's definition of the requisite force to accomplish sexual assault remained and remains unchanged.

[2] For example, in Mings, the trial court instructed the jury that the force required to support the defendant's conviction for rape "must be such as may reasonably be supposed adequate to overcome the physical resistance of the [victim]," taking into consideration the relative strength of the parties and upon all the facts and circumstances of each particular case, including, but not limited to the victim's outcries and expressions of

-

[the Supreme Court of Virginia] has said that 'no positive resistance' by the victim need be demonstrated if it appears that the crime was effected without her consent." <u>Jones</u>, 219 Va. at 986, 252 S.E.2d at 372 (citing <u>Mings</u>, 85 Va. at 640, 8 S.E. at 475); <u>accord</u> <u>Snyder</u>, 220 Va. at 796, 267 S.E.2d at 57.

To determine whether the defendant used sufficient force to overcome the victim's will in <u>Jones</u>, the Supreme Court of Virginia considered all of the circumstances attending the commission of the crime. 219 Va. at 986-87, 252 S.E.2d at 372-73. The significant evidence found sufficient in <u>Jones</u> included the relationship of the victim to the perpetrator, the situs of the offense, the aggressive nature of the defendant's behavior and the fear created in the victim. The Court affirmed the conviction based on evidence that the victim did not know the defendant, that the defendant drove her to a remote area where the offense was committed, that the victim was ordered to submit, and that the victim was frightened during and after the incident. <u>Id.</u> Despite the fact that the victim "was not struck, that she did not scream, and that she did not fight her assailants," the Court held that "the evidence amply supports the conclusion of fact that these crimes were committed against

alarm. 85 Va. at 639-40, 8 S.E. at 475. Under <u>Mings</u>, no particular amount of resistance is required, provided the act was committed against the victim's will and without her consent. <u>Id.</u> at 640, 8 S.E. at 475.

-

the victim's will, without her consent and thus by force." Id. at 986, 252 S.E.2d at 372.

The present case likewise requires that we determine whether the crime committed against Dudley was "against [her] will, without her consent and thus by force." Id. In considering whether Wactor employed force sufficient to overcome Dudley's resistance and will, we consider all of the circumstances, including the time and place of the crime, the victim's reaction during and after the incident, as well as the parties' relationship and their relative physical capabilities. See id. at 986-87, 252 S.E.2d at 372-73. We find that the evidence supports the trial court's conclusion that Wactor used sufficient force to overcome Dudley's will.

Dudley could not walk on her own or position herself in bed. Only one of her arms was fully functional. She was thus unable to physically resist Wactor or easily call the nurses for help. Moreover, she expected Wactor to provide nursing assistance and, therefore, permitted him to undress and touch her. Wactor, as her caretaker, was thus in a position of trust, a position he used to commit the offense. When we consider Dudley's physical condition, which limited her ability to defend herself,[3] Wactor's status as her nurse and his relationship to

---

[3] We note that, notwithstanding facts in this case which appear to make out a case of sexual object penetration

-

her in that capacity, the use he made of his status and professional relationship to Dudley to initiate unwanted touching and effectuate the object sexual vaginal penetration, and the fear and psychological paralysis Wactor's aggressive behavior instilled, we conclude that the Commonwealth proved the requisite force to overcome Dudley's will and resistance.  See Mings, 85 Va. at 640, 8 S.E. at 475 (holding that the defendant must use or show force sufficient to overcome resistance, but that no resistance is required where the evidence shows lack of consent); accord Jones, 219 Va. at 986, 252 S.E.2d at 372; Snyder, 220 Va. at 796, 263 S.E.2d at 57.

Affirmed.

---

perpetrated "through the use of [Dudley's] . . . physical helplessness," Code § 18.2-67.2(A), the statutory definition of "physical helplessness" excludes victims with Dudley's physical infirmities because it is limited to victims with a "physical condition" that renders them "physically unable to communicate an unwillingness to act . . . ."  Code § 18.2-67.10(4).  Because Dudley was physically able to communicate, the evidence in this case would not be sufficient to establish "physical helplessness" and Wactor's conviction cannot be premised on this element of the offense.