COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Petty
Argued at Salem, Virginia


ANDY RAY McKINNEY

                                      MEMORANDUM OPINION[*] BY

v.       Record No. 1202-07-3           JUDGE WILLIAM G. PETTY
                                         JULY 8, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GILES COUNTY
Colin R. Gibb, Judge

Frederick M. Kellerman, Jr. (Stone & Kellerman, P.C., on brief), for appellant.

Richard B. Smith, Special Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.


A jury convicted appellant, Andy Ray McKinney, of being a principal in the second degree to voluntary manslaughter in violation of Code § 18.2-35.  McKinney appeals that conviction, arguing that the evidence adduced at trial was insufficient to support his conviction.  Specifically, McKinney contends that the evidence did not establish (1) that McKinney's "words, gestures, signals or actions [were] unambiguous in their encouragement, advisement, urging or helping the principal in the first degree"; and (2) that McKinney "adopt[ed] the criminal intent of an actual not conditional threat by the principal in the first degree."  For the reasons stated below, we determine that McKinney's second argument is procedurally defaulted.  We further hold that the evidence was sufficient to support his conviction and, accordingly, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

When the sufficiency of the evidence to sustain a criminal conviction is challenged on appeal, we "view the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grant all reasonable inferences fairly deducible therefrom." Clifton v. Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted). So viewed, the evidence establishes the following:

During the early morning hours of April 7, 2006, Jerrett Clark shot and killed Curtis Horne.[1] At the time, Clark, Horne, McKinney, and a fourth man, Jerry Murray, were all at McKinney's home. McKinney and Murray had lived together in a romantic relationship for approximately fifteen years, but no longer did so at the time relevant to this case. Curtis Horne, the victim, had more recently been involved with McKinney, but had moved in with Murray for about a month before returning to live with McKinney. McKinney was jealous of the involvement between his two former lovers. Jerrett Clark had lived with McKinney for about a year, but, with the exception of one incident, was not sexually involved with him. Clark considered McKinney a friend.

On the evening of April 6, Murray came to McKinney's home around 10:00 or 11:00 p.m. and the group began playing cards, drinking heavily, and listening to music. McKinney became upset during the evening because he believed Murray and Horne had been intimate that day and he complained to Clark that the pair were talking about their relationship "in front of his face."

---

[1] Clark pleaded guilty to second-degree murder and was awaiting sentencing at the time of McKinney's trial.

Clark was carrying a pistol in a side holster throughout the evening. At one point, when he was upset about Horne and Murray's relationship, McKinney told Clark to "Shoot him" and then, without further explanation, grabbed the gun out of Clark's holster and began waving it around saying "Well, I'll- I'll shoot him." Clark testified at trial that he did not know what McKinney was talking about and that McKinney did not point the pistol at anyone specifically. Clark retrieved the pistol from McKinney and locked it in his bedroom dresser.

About an hour later, Clark discovered that McKinney had left his home. After retrieving his gun, Clark went outside and found McKinney returning in his car. Clark related their conversation as follows:

> I said "Where did you go?" and he said, "I took care of it" and I said, "What did you take care of?" and he said, "It's ablaze right now" and I kept talking to him and he said, "Jerry's house" and I said, "What?" and he said, "Yeah, I took care of it, it's ablaze right now" and then we went back into the house.

McKinney and Clark went back inside and joined Horne and Murray. The group was sitting around a small table, drinking and discussing the Bible. Clark described what happened next:

> I said, "Well, if you [referring to Murray] don't believe in Jesus, I ought to shoot you in the foot" and then that's when Andy [McKinney] said, "Shoot Curtis [Horne], he's the one lying."

> \*   \*   \*   \*   \*   \*   \*

> I looked at Andy and I said, "Do you really want me to shoot him?" and Andy just shrugged his shoulders and I pulled my [gun from my holster] and cocked the hammer and as I was pulling it out of its holster and I put it to Curtis' head and I said, "You don't believe I'll do it, Andy" and Andy just looked at me and that's when I shot [Horne].

Clark testified that he would not have shot Horne if McKinney had not told him to do so.

After Clark shot Horne, McKinney "jumped back and said, 'Oh my God'" and Murray jumped away from the table as well. Clark left McKinney's home, and McKinney called the police. McKinney gave a statement to the police investigator that was introduced into evidence at trial. In

that statement, McKinney admitted that he was jealous of Murray and Horne's relationship and that he told Clark to shoot Horne. McKinney denied believing that Clark would actually shoot Horne based on his statement.

At the conclusion of the evidence, the court partially granted McKinney's motion to strike. It reduced the charge from principal in the second degree to murder to principal in the second degree to voluntary manslaughter, concluding that McKinney told Clark to shoot Horne in the heat of passion.[2] The jury convicted McKinney of voluntary manslaughter, and he was sentenced to three years incarceration. This appeal followed.

## II. ANALYSIS

When considering the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see Code § 8.01-680. We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We are mindful that "great deference must be given to the factfinder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988).

---

[2] McKinney did not include in his question presented or his argument the issue of whether the trial court's implied finding of lack of malice on McKinney's part is material to our analysis of the sufficiency of the evidence. Therefore, we will not address it on appeal. See Moore v. Commonwealth, 51 Va. App. 1, 3-4, 654 S.E.2d 305, 306 (2007) (Under Rule 5A:12(c), "[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals." (citation omitted)).

Although a principal in the second degree is not the perpetrator of a crime, he or she "may be indicted, tried, convicted and punished in all respects as if a principal in the first degree . . . ." Code § 18.2-18; see also Brown v. Commonwealth, 130 Va. 733, 736, 107 S.E. 809, 810 (1921); accord Rollston v. Commonwealth, 11 Va. App. 535, 539, 399 S.E.2d 823, 825 (1991). To prove that McKinney was criminally liable as a principal in the second degree for Horne's death, the Commonwealth was required "to show that [he] was not only present [during the crime] but that [he] procured, encouraged, countenanced, or approved commission of the crime. In other words, [he] must [have] share[d] the criminal intent of the party who actually committed the [crime] or be guilty of some overt act in furtherance thereof."[3] Augustine v. Commonwealth, 226 Va. 120, 124, 306 S.E.2d 886, 888 (1983).

The requisite intent may be inferred from the accused's "'words, gestures, looks or signs . . .'" as shown by the facts and circumstances of the case. Pugliese v. Commonwealth, 16 Va. App. 82, 93, 428 S.E.2d 16, 24 (1993) (quoting Foster v. Commonwealth, 179 Va. 96, 99, 18 S.E.2d 314, 315-16 (1942)). Put simply:

> When the alleged accomplice is actually present and performs overt acts of assistance or encouragement, he has communicated to the perpetrator his willingness to have the crime proceed and has demonstrated that he shares the criminal intent of the perpetrator. When the alleged accomplice is actually present but performs no overt act, he is nonetheless a principal in the second degree if he has previously communicated to the perpetrator that he shares the perpetrator's criminal purpose.

Ronald J. Bacigal, Criminal Offenses & Defenses in Virginia 496 (2007-2008 ed). Moreover,

> "proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to

---

[3] However, "[s]pecific intent is not required to convict the defendant as a principal in the second degree." Rollston, 11 Va. App. at 540, 399 S.E.2d at 826. The *mens rea* requirement for conviction as a principal in the second degree is the defendant's intent "'to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it.'" Id. (quoting Ramsey v. Commonwealth, 2 Va. App. 265, 269, 343 S.E.2d 465, 468 (1986)).

infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same."

Pugliese, 16 Va. App. at 93-94, 428 S.E.2d at 25 (quoting Foster, 179 Va. at 99-100, 18 S.E.2d at 316) (citations omitted).

## A.

There is ample evidence in this record from which the jury could have reasonably concluded that McKinney was a principal in the second degree. The evidence shows that over the course of the evening McKinney had expressed to Clark his anger regarding the relationship between Horne and Murray. He also intimated to Clark that he had burned down Murray's house and, albeit without mentioning a name, told Clark to "shoot him."

Immediately prior to the killing, McKinney specifically commanded Clark to "shoot Curtis." When Clark was pulling his pistol out of its holster, Clark asked whether McKinney "really want[ed]" him to shoot Horne. McKinney merely shrugged his shoulders. When Clark stated to McKinney immediately before shooting Horne in the head, "You don't believe I'll do it[,]" McKinney "just looked" at him and did nothing to dissuade Clark. See Pugliese, 16 Va. App. at 94, 428 S.E.2d at 25 ("While mere presence at the scene of a crime or knowledge that a crime is going to be committed does not constitute aiding and abetting, accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions and thereby aids and abets the actual perpetrator in the commission of the crime."). Thus, by his words, gestures, and actions, viewed in the light most favorable to the Commonwealth, McKinney explicitly demonstrated that he shared Clark's criminal intent to kill Horne. Hence, we conclude that the evidence is sufficient to support McKinney's conviction.

B.

McKinney also argues on appeal, "[a] principal in the second degree must adopt the criminal intent of an actual not conditional threat by the principal in the first degree." He states that "[a] conditional threat is not actionable as an assault" and that "[t]herefore, McKinney could not adopt the criminal intent of Clark based upon Clark's statement" that he "ought to shoot [Murray] in the foot" for his professed atheism. However, he fails to explain how Clark's statement regarding Murray has any bearing on McKinney's command to "shoot Curtis."

While McKinney raises this issue he does not cite any legal authority for it or make a legal argument beyond the ambiguous and conclusory statements set forth above. We will not address an argument on appeal that is unsupported by legal argument. See Rule 5A:20(e).

III. CONCLUSION

The evidence adduced at trial was sufficient to support McKinney's conviction. Accordingly, we affirm.

Affirmed.