COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, O'Brien and Russell
Argued by videoconference


RYAN SWINEA, S/K/A
  RYAN LANCE SWINEA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0105-20-1                   JUDGE WESLEY G. RUSSELL, JR.
                                                       DECEMBER 22, 2020

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                           John W. Brown, Judge

        Lucille M. Wall, Assistant Public Defender, for appellant.

        Liam A. Curry, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        Ryan Swinea was convicted in a bench trial of possession of a Schedule I or II substance

without a prescription in violation of Code § 18.2-250.  On appeal, Swinea does not contest that he

possessed the substance; he argues that the Commonwealth failed to prove he was aware of its

nature and character.  He also challenges the trial court's decision to deny him first offender status.

For the reasons that follow, we affirm the judgment of the trial court.

                                    BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)).  Accordingly, we discard any of appellant's conflicting evidence, and regard as true all

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

credible evidence favorable to the Commonwealth and all inferences that reasonably may be drawn from that evidence.  Id. at 473.

At 12:55 p.m. on April 3, 2019, Officer J.S. Land responded to a call regarding Swinea at the Maplewood Apartments in Chesapeake.  Swinea told Land that he was waiting for his children's mother to take him to work.  Land determined that Swinea was subject to an outstanding arrest warrant and, pursuant to that warrant, placed him under arrest.[1]  In conducting a search incident to that arrest, she discovered a "rolled-up package in the right watch pocket" of Swinea's jeans.  The package was "narrow and long" in a "foil plastic [cigar] wrapper[.]"  It contained three and a half orange pills.

Land asked Swinea what the pills were.  He responded that he was "given" ibuprofen for a toothache.  Land suspected that the half pill was contraband because it was "a slightly different color" and different shape than the other three orange pills.  It had "74" imprinted on one side and "0" imprinted on the other.  Swinea told Land that he thought the half pill was Tylenol.

Being unfamiliar with the pill, Land conducted "a pill search" on Drugs.com.  Based on her research, she concluded that the half pill was Adderall.  She asked appellant about Adderall, and, according to Land, Swinea answered that he had been prescribed Adderall as a child, but had not been prescribed it since the sixth grade.

Land was "confident" that the other three pills were not contraband, so she did not ask the lab to analyze those.  The three pills were destroyed and were unavailable at trial.

The half pill was sent to the lab for testing where it was analyzed by Lisa Jackson, a forensic scientist.  Without objection, Jackson testified at trial as an expert drug chemist.  According to Jackson, she initially identified the half pill through its appearance and markings

---

[1] Swinea does not challenge either his arrest or the subsequent search incident to that arrest.

because she had seen this type of "tablet hundreds of times[,]" and thus, it was "a known tablet" that she could recognize "just by sight."

In addition to explaining her visual identification of the half pill, Jackson testified regarding the chemical analysis she performed of it. The substance was identified as containing Amphetamine in a pharmaceutical preparation that was sold under the brand name Adderall.[2] The certificate of analysis from Jackson's chemical analysis, which was introduced into evidence, specified Jackson's conclusion that the half pill "contain[s] Amphetamine (Schedule II)."

The Commonwealth rested, and Swinea moved to strike. The trial court denied the motion to strike, and Swinea then elected to put on evidence. Swinea was the first defense witness to testify.

Swinea testified that Chelsea Harrison, the mother of his children, picked him up early from work at approximately 2:00 p.m. or 2:30 p.m. on April 3, 2019, because he had an abscessed tooth that was giving him a headache. When they stopped at a gas station, Swinea asked Harrison for "ibuprofen or some type of pain medicine to subdue [his] headache and toothache." Swinea described being in "excruciating pain" and was just "focused on laying back" in the passenger seat. Harrison retrieved some pills from "her mom bag because she's a mom and happened to have some over-the-counter medication." Harrison then placed the pills in the cup holder next to appellant. She entered the "gas station/convenience store," which sells food and beverages, to pay for the gas that Swinea had just pumped.

Swinea did not have anything to drink to take the pills, so he placed them in his empty "Black & Mild" cigar wrapper, which he rolled up and put in his pants' "little pocket for security and safety." Swinea further explained that he had placed the pills in the watch pocket because

_____

[2] Amphetamine is the active ingredient in Adderall.

his larger pockets contained "sawdust from [his] job." He stated that he did not realize that Harrison had given him one of her prescription medications. Harrison subsequently dropped off Swinea across the street from her apartment complex.

Harrison testified that after she picked up Swinea from work on April 3, 2019, she noticed that his face was swollen because he had "some type of inflammation in his mouth." He asked her for some pain medication, and she offered him ibuprofen, aspirin, and Benadryl. Harrison tried to get the pills from her purse while she was driving, but, after she "swerved a little bit," waited until they stopped for gas to give Swinea the pills. When Swinea exited the car to pump the gas, Harrison "threw [the pills] in the cup holder" for appellant to retrieve after he pumped the gas. Harrison claimed that she did not knowingly give Swinea her Adderall pill because she needed all of her prescription medications for herself.

Harrison then went into the gas station to pay for the gas. Harrison knew that Swinea did not have anything to drink to take the pills; when the trial court asked why she did not get him a drink when she went into the store, she responded, "Is that my responsibility?"

Harrison testified that she suffers from an autoimmune disease and was prescribed "Adderall, Tylenol, Benadryl, different medications that align with [her] disease." She stated that she keeps her pills in a pillbox labelled a.m. and p.m. in order to keep track of her medications. She relayed to the trial court that she had been taking Adderall for two years. Harrison confirmed that she takes one full Adderall pill at 5:30 a.m. and another pill between 11:00 a.m. and 4:00 p.m., but said that sometimes she takes only a half pill for her second dose on the advice of a doctor who diagnosed her with a heart condition. She explained that if she takes a half pill, she will place the other half pill back in her pill container, although it depends upon where she is at the time. Because of memory issues, she has trouble keeping track of her half-tablets. She claimed that it was possible that the half Adderall pill given to Swinea was

- 4 -

already in the cup holder when she put the other pills in there; she stated that sometimes while driving she bites a tablet in half and then just "drop[s] it back down" in the cup holder.

After the defense had rested, the Commonwealth called two rebuttal witnesses. First, the Commonwealth recalled Land, who testified that her interaction with Swinea occurred at 12:55 p.m. Next, the Commonwealth called Detective Adam Beha and sought to qualify him as an expert on the packaging, distribution, and personal use of controlled substances. Over Swinea's objection, the trial court qualified Beha as such an expert.

Beha testified about Adderall as a street drug. Beha described his experience of encountering abusers who have cut their pills so "they can take it more than once." He testified that when users of controlled substances "ha[ve] small amounts, user amounts on their person" that it is "more common than not" for them to keep the substance in the watch pocket of their pants.

At the conclusion of all of the evidence, appellant renewed his motion to strike. After hearing the parties' arguments, the trial court convicted appellant for possession of a Schedule I or II controlled substance, explaining:

> The [c]ourt finds that the defendant was clearly in exclusive possession. The question, really, is knowing possession of a controlled substance. The [c]ourt finds by the shape, the size, and the fact that it's a half-tablet, a different color, shape, and size than the other three ibuprofens, if they were, in fact, ibuprofens that were exhibited on the hood of the car, is different enough that he should have done something or knew something.

The trial court also commented that Swinea testified that he was in "excruciating pain," yet, Swinea and Harrison elected to stop at a gas station, delaying their arrival at Swinea's ultimate destination. Further, despite Swinea's claims of pain, he did not take the medication, and neither he nor Harrison obtained water from the convenience store or her apartment to aid Swinea in taking the medication. The trial court also noted that Swinea's version of events conflicted with

the timeline established by Land, calling into question Swinea's claim that he was coming from work. Finally, the trial court expressly found that neither Swinea nor Harrison were credible. As a result, the trial court found Swinea guilty of possession of a Schedule I or II controlled substance.

Upon being found guilty, Swinea requested that the trial court consider granting him first offender status. The trial court agreed to consider the issue, ordered a presentence report, and set a sentencing hearing date.

At the sentencing hearing, the trial court addressed Swinea's request for first offender status pursuant to Code § 18.2-251. The trial court denied the request for first offender status. In doing so, the trial court commented on Swinea's criminal history. Among other things, the trial court noted that Swinea had driven when prohibited from doing so and that he failed to comply with court-imposed conditions when he previously had been granted a deferred disposition/first offender status in an assault and battery case and ended up serving five months in jail for that offense.

On appeal, Swinea argues that the trial court erred in finding the evidence sufficient to support his conviction for possession of a controlled substance. He also argues that the trial court abused its discretion in declining to grant him first offender status.

ANALYSIS

I. Sufficiency of the evidence

In his first assignment of error, Swinea contests the sufficiency of the evidence to support his conviction for possession of a controlled substance. When faced with such a challenge, an appellate court "does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt[; r]ather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the

- 6 -

essential elements of the crime beyond a reasonable doubt." Secret v. Commonwealth, 296 Va. 204, 228 (2018) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). In conducting our review, we view the facts "in the light most favorable to the Commonwealth, the prevailing party at trial[,]" Gerald, 295 Va. at 472 (quoting Scott, 292 Va. at 381), and "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom," Kelley v. Commonwealth, 289 Va. 463, 467-68 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)). Furthermore, "[t]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination[,]" Crawley v. Commonwealth, 29 Va. App. 372, 375 (1999), and thus, "we do not 'substitute our judgment for that of the trier of fact'" regarding such questions, Blow v. Commonwealth, 52 Va. App. 533, 538-39 (2008) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002)).

In a prosecution for the possession of a controlled substance, the Commonwealth must not only prove that a defendant possessed, whether actually or constructively, the controlled substance, it must also "produce evidence sufficient to support a conclusion beyond a reasonable doubt that the defendant's possession of the [substance] was knowing and intentional." Young v. Commonwealth, 275 Va. 587, 591 (2008). To prove that the possession was knowing and intentional, the Commonwealth must establish that the defendant possessed the substance "*with knowledge of its nature and character.*" Id. (quoting Burton v. Commonwealth, 215 Va. 711, 713 (1975)). A defendant's knowledge of the nature and character of the substance he is charged with possessing "is an essential element of the crime." Id.; see also Yerling v. Commonwealth, 71 Va. App. 527, 534 (2020).

On appeal, Swinea does not dispute that the evidence established that he actually possessed the half pill that ultimately proved to be Adderall or that he knew he possessed it.

Rather, he contends that the evidence failed to establish he was aware of the nature and character of the half pill he admittedly possessed.

In support of his argument, Swinea relies on the Supreme Court's decision in Young. Young was convicted of possession of a controlled substance, specifically morphine, that police discovered in a prescription pill bottle found in Young's purse. Young, 275 Va. at 589. The label on the bottle indicated that the substance inside was OxyContin and had been prescribed for a friend of Young's. Id. The bottle did not contain OxyContin. Id. Although sufficiently suspicious of the pills to handcuff Young, the officer who discovered the pill bottle and its contents "could not determine the nature of the pills," and thus, the nature of the pills was unknown until laboratory analysis was undertaken. Id.

Young did not testify at trial, and the statements she made to the officer at the scene were suppressed. Id. Evidence at trial established that Young was aware that the pill bottle was in her purse, id. at 590, but not that she was aware of what it contained. No evidence established that she had ever seen or touched the pills contained in the bottle. No evidence was offered to establish that Young had any familiarity with morphine.

The Supreme Court reversed Young's conviction, finding "the record devoid of evidence sufficient to support a finding, beyond a reasonable doubt, that the defendant possessed morphine with knowledge of its nature and character[.]" Id. at 592-93. In explaining its conclusion, the Supreme Court emphasized that the officer, "after examining the pills, could not determine their nature without submitting them for laboratory analysis, and there is no reason to infer that the defendant was any better informed." Id. at 592.

Swinea contends that because Land, like the officer in Young, initially could not identify the half pill of Adderall as a controlled substance and required further research to learn its nature and character, he is entitled to a reversal of his conviction. We disagree.

Although Land was unable to identify the half pill as a controlled substance by sight, the record reveals that there is "reason to infer that [Swinea] was . . . better informed." Id. at 592. According to Land, Swinea admitted at the scene to having been prescribed Adderall previously, making it reasonable for the fact finder to conclude that he was familiar with the drug and far more likely to recognize it than the average citizen or police officer.

Additional facts further distinguish Swinea's circumstances from Young. Unlike Young, it is undisputed that Swinea saw and touched the half pill of Adderall. Not only did Swinea see and touch the half pill, he repackaged it in a cigar wrapper and placed it in the watch pocket of his pants. Furthermore, unlike the case in Young, expert testimony in this case confirmed that street users of Adderall often cut the pills in half to allow them to get two hits from one tablet, often carry other, legal medications with their contraband medications, and often store small amounts of controlled substances in the watch pockets of their pants. A rational fact finder reasonably could conclude that these facts inferentially support the conclusion that Swinea was aware of the nature and character of the Adderall he admittedly possessed.

Finally, unlike the case in Young, the trier of fact was able to consider both Swinea's statements at the scene and his trial testimony in reaching its conclusion. The trial court rejected Swinea's explanation, noting that his claims were highly implausible. The trial court explained that Swinea's claim that he sought over the counter pain medication because he was "in excruciating pain" that limited him to being "focused on laying back" on the passenger seat of the car was belied by the fact that he neither took the medication nor sought to obtain a drink to assist him in taking the medication. Furthermore, the trial court noted the discrepancy in the timelines established by Swinea and Land, recognizing that Land's testimony undercut Swinea's claim that he was coming from work, which, in turn, undercut his claim that he had placed the Adderall in the watch pocket of his pants because his larger pockets were filled with sawdust

- 9 -

from work.  Because the fact finder reasonably rejected Swinea's testimony, his explanation "must be interpreted . . . as [a] mere fabrication [ ] to conceal his guilt" on appeal.  Ervin v. Commonwealth, 57 Va. App. 495, 515 (2011) (*en banc*) (alterations in original) (quoting Staton v. Commonwealth, 36 Va. App. 282, 289, aff'd on reh'g en banc, 37 Va. App. 238 (2001)).  Thus, the trier of fact's conclusion that Swinea was lying provides "additional affirmative evidence of his guilt."  Staton, 36 Va. App. at 289.

Although each of these pieces of evidence that were not present in Young, in and of themselves, might not support a conclusion beyond a reasonable doubt that Swinea was aware of the nature and character of the Adderall he possessed, neither an appellate court nor a trier of fact views the pieces of evidence in isolation.  Rather, both may consider "the combined force of many concurrent and related circumstances" that ultimately "lead a reasonable mind irresistibly to a conclusion."  Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Muhammad v. Commonwealth, 269 Va. 451, 479 (2005)).  Given the totality of the evidence and our deferential standard of review, we cannot say the trial court erred in concluding the evidence was sufficient to convict Swinea of possession of a controlled substance.[3]

---

[3] In reaching this conclusion, we stress our limited role on appeal.  Faced with a sufficiency of the evidence challenge, we may reverse the trial court's judgment "only if that court's judgment is plainly wrong or without evidence to support it."  Cartagena v. Commonwealth, 68 Va. App. 202, 207 (2017) (quoting Allen v. Commonwealth, 287 Va. 68, 72 (2014)).  "An appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"  Williams v. Commonwealth, 278 Va. 190, 193 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Sullivan v. Commonwealth, 280 Va. 672, 676 (2010) (emphasis added).  Because, for the reasons stated above, the evidence was sufficient to support a finding of guilt, we must affirm the decision of the trial court.

II.  Denial of first offender status

Swinea next argues that the trial court erred in refusing to grant him first offender status pursuant to Code § 18.2-251.  In pertinent part, Code § 18.2-251 provides that

> Whenever any person who has not previously been convicted of any criminal offense under this article or under any statute of the United States or of any state relating to narcotic drugs, marijuana, or stimulant, depressant, or hallucinogenic drugs, or has not previously had a proceeding against him for violation of such an offense dismissed as provided in this section, or pleads guilty to or enters a plea of not guilty to possession of a controlled substance under § 18.2-250, the [trial] court, upon such plea if the facts found by the court would justify a finding of guilt, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place him on probation upon terms and conditions.

(Emphasis added).

By its express terms, Code § 18.2-251 allows a trial court to grant first offender status to a defendant meeting the specified criteria, but does not require that a trial court do so.  Although Code § 18.2-251 requires the trial court conduct an "individual assessment" of a defendant's suitability for first offender status, Nunez v. Commonwealth, 66 Va. App. 152, 160 (2016), the statute vests a trial "court [with] broad discretion . . . in deciding whether to defer a finding of guilt and to grant first offender status to a first-time drug offender[,]" Montalvo v. Commonwealth, 27 Va. App. 95, 98 (1998).  As a result, "[w]e will reverse a trial judge's decision to deny first offender status only where the trial judge has made an arbitrary decision and abused his discretion by failing to exercise a conscientious judgment in rendering the decision." Id.

Here, it is clear that the trial court's decision to refuse Swinea's request for first offender status was neither arbitrary nor the result of a failure of the trial court to exercise conscientious judgment.  In rejecting Swinea's request, the trial court reviewed Swinea's criminal history, which revealed multiple offenses tied to Swinea's failure to respect the authority of courts and/or

- 11 -

obey conditions imposed upon him. These offenses include multiple occasions when Swinea

drove despite not having a license due to suspension or revocation, two convictions for contempt

of court, and a prior conviction for trespassing after having been forbidden to do so. Perhaps

most importantly, Swinea's criminal history revealed that he previously had been granted a

deferred disposition/first offender status for a domestic assault and battery charge and that he

failed to meet the terms and conditions imposed as a result. Each of these offenses, let alone the

totality of them, would allow a reasoned decisionmaker to conclude that Swinea had failed to

"demonstrate a likelihood of being able to adhere to the terms and conditions of probation"

associated with first offender status under Code § 18.2-251. Id. at 99. Because the trial court's

denial of Swinea's request for first offender status was based on consideration of material facts

related to Swinea's individual suitability for same, its decision was neither arbitrary nor the

result of a failure to exercise conscientious judgment. Accordingly, we cannot say the trial court

abused its discretion in denying Swinea's request.

CONCLUSION

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

- 12 -