COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:    Chief Judge Decker, Judges Beales and O'Brien
Argued by videoconference


ANTHONY BRIAN BARNETT

                                                        OPINION BY
v.        Record No. 0487-20-3               JUDGE MARY GRACE O'BRIEN
                                                        APRIL 6, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

John I. Jones, IV (John Jones Law, PLC, on briefs), for appellant.

A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Anthony Brian Barnett ("appellant") of wounding by mob, in violation of

Code § 18.2-41, and assault and battery, in violation of Code § 18.2-57.[1]  The court denied

appellant's motions to strike the evidence and to set aside the verdicts.  Appellant contends that the

court erred because "no rational factfinder could have found that [he] was part of a mob" at the time

the victim was wounded.  For the following reasons, we affirm appellant's conviction.

BACKGROUND

"On appeal, 'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"  Smith v.

Commonwealth, 66 Va. App. 382, 384 (2016) (quoting Williams v. Commonwealth, 49 Va. App.

439, 442 (2007) (*en banc*)).  Further, we "discard the evidence of the accused in conflict with that of

---

[1] Appellant was originally charged with malicious wounding, in violation of Code
§ 18.2-51; the jury convicted him of assault and battery as a lesser-included offense.  He does not
contest this conviction on appeal.

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Yerling v. Commonwealth, 71 Va. App. 527, 530 (2020) (quoting Commonwealth v. Perkins, 295 Va. 323, 323-24 (2018)).

Viewed from this perspective, the record established that on May 29, 2019, Miquel Harper drove his box truck to a restaurant, accompanied by his teenaged stepson. When he entered the restaurant's parking lot, his truck nearly collided with appellant's car, which was leaving the lot. Harper and appellant, who did not know each other, exchanged angry words and gestures through their rolled-up windows before appellant drove away. Harper parked, and he and his stepson entered the restaurant and sat down at a table.

Shortly thereafter, appellant returned, opened the restaurant door, and gestured for Harper to come outside. Harper joined appellant in the parking lot, and the two men engaged in a heated argument. Eventually, Harper stated, "[Y]ou're not hurt, I'm not hurt[;] your property is not damaged, my property is not damaged[;] this is stupid and I'm over it." He concluded by saying "fuck you" to appellant and went back inside.

Appellant drove home and prepared for a fight with Harper. He changed his shoes because he "didn't want to fight [Harper] with slides on" and called his cousin, Lamar Barnett ("Lamar"), to meet him at the restaurant as "backup" for the fight. Lamar subsequently contacted appellant's cousin Floyd Harris to join them.

Approximately five minutes later, appellant returned to the restaurant in a black Infiniti. Lamar and Harris arrived in a white Cadillac. Harris was armed with a 9 mm semiautomatic pistol.

Appellant entered the restaurant and motioned for Harper to come outside again. When Harper came out to the parking lot, he noticed Lamar and Harris standing nearby. Appellant said, "Fuck who?" and punched Harper in the face. As Harper began to fight back, Lamar and Harris

joined the fight, punching and kicking Harper. At that point, Harper, who had a concealed .380 caliber semiautomatic pistol, warned the men to "get off" or he "was going to shoot."

Harper retrieved his gun and began shooting, and appellant and Lamar ran toward the restaurant while Harris ran to the opposite side of the parking lot. Harper shot appellant twice and Lamar three times; he was unaware of Harris's location while he was shooting. After the fifth shot, Harper tried to reenter the restaurant, but Harris returned and shot him in his shoulder.

Immediately thereafter, appellant, Lamar, and Harris went to the hospital; appellant drove the Infiniti and Lamar drove the Cadillac with Harris as a passenger. The two vehicles arrived at the same time, and Harris helped appellant and Lamar into the emergency room.

Detective John Haley of the Roanoke City Police Department interviewed appellant at the hospital. Appellant admitted that he asked Lamar to meet him at the restaurant as "backup" for the fight but denied knowing that Lamar was bringing Harris.[2] Appellant also admitted that he knew Harris carried a gun. Appellant described his altercation with Harper as a "one[-]on[-]one fight" and denied that Harris or Lamar was involved.

Video footage from two businesses near the restaurant captured portions of the incident and established that fewer than forty seconds elapsed between the time that Harper began shooting and the time the Cadillac and Infiniti drove away. The footage showed the two vehicles leaving the parking lot at approximately the same time. It also corroborated Harper's testimony that all three men punched and kicked him, contradicting appellant's statement to Detective Haley that only Harper and appellant were involved in the fight.

---

[2] At trial, the parties stipulated that appellant did not call Harris before returning to the restaurant.

At trial, the Commonwealth and appellant stipulated that "the gunshot wound that Mr. Harris inflicted upon Mr. Harper [was] the only injury suffered by Mr. Harper that [constituted] the felony charge[] of [wounding] by mob[.]"

After the jury convicted appellant, it sentenced him to seven years in prison for the wounding by mob conviction and twelve months in jail for the assault and battery conviction. The court imposed the sentences and added one year of post-release supervision for the wounding by mob conviction.

ANALYSIS

Appellant was convicted of violating Code § 18.2-41, which imposes criminal liability upon "[a]ny and every person composing a mob which shall maliciously or unlawfully shoot, stab, cut[,] or wound any person, or by any means cause him bodily injury with intent to maim, disable, disfigure[,] or kill him[.]" To obtain a conviction under this statute, the Commonwealth must prove that "the accused was a member of a group composing a mob; that the mob caused the victim bodily injury; and that the mob acted with the malicious [or unlawful] intent 'to maim, disable, disfigure[,] or kill' the victim." Commonwealth v. Leal, 265 Va. 142, 146 (2003) (quoting Code § 18.2-41).

Appellant's sole assignment of error challenges the sufficiency of the evidence establishing that he was "part of a mob with Harris when Harris shot Harper." Appellant argues that even if he, Lamar, and Harris constituted a mob when they arrived at the restaurant, the mob no longer existed by the time Harris shot Harper.

When reviewing the sufficiency of the evidence to support a criminal conviction, we do not "substitute our judgment for that of the [jury]." Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (en banc) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380 (2002)). Rather, "after viewing the evidence in the light most favorable to the prosecution," id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), "we review the jury's decision to see if reasonable jurors could

- 4 -

have made the choices that the jury did make," Crowder v. Commonwealth, 41 Va. App. 658, 662 (2003) (quoting Pease v. Commonwealth, 39 Va. App. 342, 355 (2002) (*en banc*), aff'd, 266 Va. 397 (2003) (per curiam)). "We let the decision stand unless we conclude no rational juror could have reached that decision." Id. (quoting Pease, 39 Va. App. at 355).

A "mob" is statutorily defined as "[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in [Code] § 19.2-297.1[.]" Code § 18.2-38; see also Harrell v. Commonwealth, 11 Va. App. 1, 7 (1990) (stating that persons "assemble" as a mob when they "collectively band together with the common purpose and intention of committing an assault and battery upon a person"). The existence of a mob is a question of fact "evaluated on a case-by-case basis." Johnson v. Commonwealth, 58 Va. App. 625, 635 (2011) (quoting Johnson v. Commonwealth, 58 Va. App. 303, 320 (2011)); see also Harrell, 11 Va. App. at 7 (stating that "[w]hether a group of individuals has been . . . transformed into a 'mob' depends upon the circumstances").

Although the Commonwealth must prove that a defendant was a member of a mob when the wounding actually occurred, see Harrell, 11 Va. App. at 4, it does not need to prove that the defendant "actively encouraged, aided, or countenanced the act," Abdullah v. Commonwealth, 53 Va. App. 750, 759 (2009) (quoting Leal, 265 Va. at 147). Rather, "criminal accountability flows from being a member of the mob, regardless of whether the member aids and abets in the [wounding]." Harrell, 11 Va. App. at 8. See also Hamilton v. Commonwealth, 279 Va. 94, 106-08 (2010) (affirming a defendant's conviction for assault and battery by mob under Code § 18.2-42, despite evidence that he did not participate in battering two victims, because the defendant associated with a gang and stood nearby while gang members battered the victims). Further, although the Commonwealth must prove that a defendant shared the mob's common intent to

commit a violent act, it does not need to prove that the defendant agreed to the manner or nature of the injury inflicted by the mob. See Sheikh v. Commonwealth, 32 Va. App. 9, 13 (2000).

Appellant argues that "[he], Lamar, and Harris, propelled by Harper's gunfire, were fleeing apart" and thus were not "assembled" as a mob when Harris shot Harper.

The evidence demonstrated that appellant and his cousins assembled in the restaurant parking lot for the purpose of fighting Harper. The three men then engaged in a physical altercation with Harper, kicking and punching him. After Harper shot appellant and Lamar, those two men, rather than leaving the area, remained in the parking lot until Harris returned and shot Harper. Cf. Hamilton, 279 Va. at 106-08; Abdullah, 53 Va. App. at 759. At that point, appellant and his cousins left the parking lot at the same time. Video footage showed that less than one minute passed between when the physical altercation began and when Harris shot Harper. Based on this evidence, a reasonable juror could find that the mob assembled by appellant in the parking lot did not disband before Harris effected the mob's purpose by shooting Harper.

Appellant also contends that at the time Harris shot Harper, appellant was no longer a member of the mob because his intention had changed from assaulting Harper to leaving the scene and getting treatment for his injuries.

Determining a defendant's intent "is a factual question, which lies peculiarly within the province of the jury." Hughes v. Commonwealth, 18 Va. App. 510, 519 (1994) (*en banc*) (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02 (1951)). Appellant and his fellow mob members assembled at the scene within two minutes of each other and together battered Harper. There is no evidence that appellant, who knew that Harris carried a gun, made any effort to stop Harris from shooting Harper. Cf. Abdullah, 53 Va. App. at 759 (finding sufficient evidence that a defendant was a member of a mob when "rather than . . . attempting to stop the [mob]'s actions, [the

- 6 -

defendant] assisted the mob in its assault on the victim"). There is also no evidence that appellant made an effort to leave for the hospital until after Harris shot Harper.

In finding appellant guilty of wounding by mob, the jury determined that the three men shared a common intent to inflict bodily injury on Harper and that appellant did not abandon or contradict this intent prior to wounding Harper. See id.; see also Sheikh, 32 Va. App. at 13-14 (holding that a defendant shared a mob's intent to wound a victim because the evidence showed that the defendant personally intended a wounding and knowingly joined an armed mob that also intended to wound the victim). Granting the appropriate deference to the jury as the finder of fact, see Kelly, 41 Va. App. at 257, we hold that the evidence was sufficient to support these conclusions.

### CONCLUSION

In sum, the evidence was sufficient to find that the mob had not disassembled at the time that Harris shot Harper: instead of leaving, appellant remained in the area with Lamar and Harris until Harris effected the mob's purpose of injuring Harper. The evidence was also sufficient to establish that appellant continued to share the mob's intent to injure Harper: appellant neither abandoned nor contradicted the mob's intent prior to Harris shooting Harper.

Accordingly, we affirm appellant's conviction of wounding by mob in violation of Code § 18.2-41.

Affirmed.