## Wytheville.

### BAILEY v. THE COMMONWEALTH.

#### JUNE 17th, 1886.

CRIMINAL PROCEEDINGS—*Rape—Case at bar.*—Prisoner leaving his wife at night at a neighborhood party and going home alone, went to his fourteen year old step-daughter's bed in a room where three younger children were sleeping. She forbid his getting into the bed, but he got in. She said she would tell her mother, and he said, "If you do, I will whip you." He then "held her hands, placed his privates to hers, and forced her." She made no outcry. The children were not awakened. A neighbor, one hundred yards distant, heard nothing. She made no complaint for six days. Her person and apparel were not examined. He admitted having intercourse with her—

HELD :

> Under the circumstances, the verdict of guilty of rape, should not be disturbed.

Error to judgment of circuit court of Giles county refusing writ of error to judgment of county court, sentencing Joseph A. Bailey, whom the jury had found guilty of rape, to ten years confinement in the penitentiary. Prisoner's motion for a new trial being overruled, he excepted and obtained a writ of error and *supersedeas* from one of the judges of this court.

Opinion states the facts and the points raised.

*F. S. Blair,* for the plaintiff in error.

. First. The verdict is contrary to the evidence, as the prosecutrix, from the facts and circumstances of her own statement, cannot be believed.

She made no alarm or outcry at the time of pretended rape, although there were three children (her brothers and sisters) sleeping in the same room, one of whom was eight or ten years old. Why did she not arouse them? She made no alarm or outcry, although a neighbor's house was in sight, and within 100 yards of the house where she claims to have been violated. She did not tell her mother of the rape when latter came home on same (Saturday) night, from Lute Morgan's. She did not tell her mother of it until the next Friday, nearly one week after the pretended violence. 3 Greenleaf on Ev., sec. 212. There was no physical evidence of rape; no proven marks of violence on the person. See 3 Wharton & Stelle, Med. Juris., secs. 42, 249. It is proved by James Shaver that C. H. Collins "egged" her to make the charge—and that she had nothing against Bailey, and there would have been nothing of this charge *but for said Collins.* The general bad character of prosecutrix, for truth and veracity, is proven by five witnesses. She stated, on cross-examination, that she had not told Shaver, on the south side of the top of Peter's mountain, that she had nothing against Joseph Bailey, &c., &c., while James Shaver swears that she did tell him. She stated that James Shaver never brought her back from West Virginia, but that Samuel Shaver did. She is impeached by both James and Samuel Shaver. William Maser, a witness for the Commonwealth, impeaches her character for virtue—that "he had knew things detrimental to her character," after the charge against Bailey. From her own statement, on cross-examination, she did not *resist* Bailey. "She stated that all she did to resist Bailey was to tell him not to get in bed with her."

The following Virginia cases next show that Virginia courts are not disposed to convict of rape, upon the sole evidence of the prosecutrix, if the circumstances are unfavorable and suspicious. *Broggie's Case,* 10 Gratt. 722. In this case the court

says that the fact of prosecutrix making no outcry or complaint, is unfavorable, and the charge is presumed to be an *afterthought*. *Boxley* v. *Commonwealth*, 24 Gratt. 651; *Christian* v. *Commonwealth*, 23 Gratt. 954; *The People* v. *James Hamilton*, 2 Green's Criminal Law Report, 432. See *Law* v. *Commonwealth*, 75 Va. 890, where court says the "Natural abhorrence of crime diverted the attention of jury," etc., from a proper consideration of the evidence. See also, 3 Wharton & Stelle Med. Juris., sec. 609, as to necessity for medical testimony.

Second. The testimony does not prove that the rape was committed. *Commonwealth* v. *Thomas*, 1 Va. Cases 307. In this case there was *no* penetration. He, prisoner, "brought his private parts in contact with her private parts, and forced her." Desty Crim. Law, sec. 133, *a;* Mayo's Guide, p. 536, Virginia Criminal Laws, (Matthews) p. 166, sec. 15 and note 8; Wharton & Stelle Med. Juris., sec. 612. "Forced her" has no legal signification; it means nothing. He may have "forced her" to do one thing or another. It is too general, too indefinite for a conviction. The testimony of the prosecutrix was uncorroborated. She and one C. H. Collins were the *only two* Commonwealth witnesses offered *in chief*. Four other witnesses were introduced to reinstate character of prosecutrix after its effectual impeachment. This testimony tends to disprove rape, and proves *voluntary coition—intercourse*. See Webster Un. Dictionary, p. 705.

In conclusion, Lord Hale, in his 1st Pleas of the Crown, 635, said, "Rape is an accusation easily made; hard to be proved, and still harder to be defended *by one ever so innocent.*

*R. A. Ayers*, Attorney-General, for the Commonwealth.

LACY, J., delivered the opinion of the court.

The charge is that in the night time the plaintiff in error entered the bed of his fourteen year old step-daughter, which

was situated in a room in which three other small children were sleeping, the largest eight or ten years old; that there were no other persons in the house, the wife of the prisoner and the mother of the prosecutrix being absent at a party in the neighborhood, to which, with an older daughter, she had been escorted by her husband, the prisoner; that the prosecutrix forbid the prisoner from getting into bed with her, but made no further resistance; "that the prisoner held her hands, and brought his private parts in contact with her private parts and forced her;" that the children in the room were not awakened, a person living one hundred yards off heard nothing of it, and another neighbor one-fourth of a mile away heard no noise. The mother and older sister returned from the party in the neighborhood that night, and heard nothing of it until, six days afterwards, the prosecutrix told her mother. The magistrate, who issued the warrant, says that the prisoner confessed to him that he had had intercourse with his step-daughter, that she was no kin to him, and he wanted to be first.

The atrocious character of the charge made, and the revolting circumstances attending it, cannot but excite the indignation, and receive the condemnation, of every person. The charge, however, is rape, and it is necessary to consider, under the law and in the light of the decisions, whether that charge is made out by the evidence and sustained by the proofs.

Rape is the having of unlawful carnal knowledge by a man of a woman, forcibly and against her will. Our statute provides that if any person carnally know a female of the age of twelve years or more, against her will, by force, he shall be, at the discretion of the jury, punished by death, or confined in the penitentiary not less than ten nor more than twenty years. This offence may be committed as well on a woman unchaste, or a common prostitute, as on any other female. In matter of evidence, however, want of chastity may, within recognized

limits, be shown as rendering it more probable that she consented.

Wherever there is a carnal connection, and no consent in fact, fraudulently obtained, or otherwise, there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime. In the ordinary case, when the woman is awake, of mature years, of sound mind, and not in fear, *a failure to oppose the carnal act is consent.* And it has been held that, though she objects verbally, if she makes no outcry and no resistance, she by her conduct consents, and the carnal act is not rape in the man; and that the jury must be satisfied that she resisted the man to the extent of her ability; that the resistance must be up to the point of being overpowered by actual force, or of inability, from loss of strength, longer to resist; or that resistance is dangerous or absolutely useless; or there must be dread or fear of death; that the will of the woman must oppose the act, and that any inclination favoring it is fatal to the prosecution.

While on the other hand it has been held, that, in this age, to compel a frail woman or girl of fourteen to abandon her reason, and measure all her strength with a robust man, knowing the effect will be to make her present deplorable condition the more wretched, yet not to preserve her virtue, on pain of being otherwise deemed a prostitute, instead of the victim of an outrage, is asking too much of virtue and giving too much to vice. The law requires that the unlawful carnal knowledge shall be against her will. She must resist, and her resistance must not be a mere pretence, but must be in good faith. She must not consent. If she consent before the act, it will not be rape. But as to this consent, we may observe that it must be a consent, not controlled and dominated by fear.

If the girl is very young, and of a mind not enlightened on the question, this consideration will lead the court to demand

less clear opposition than in the case of an older and more intelligent female, or even lead to a conviction where there was no apparent opposition. A consent induced by fear of bodily harm or personal violence is no consent; and, though a man lay no hands on a woman, yet, if by an array of physical force he so overpowers her mind that she dares not resist, he is guilty of rape by having the unlawful intercourse.

In a case when in the dead hour of darkness and of night, in a house where there is no help, save from three sleeping children, the oldest eight or ten years old, with the knowledge that her mother and older sister are beyond call and beyond reach, a girl fourteen years of age sees her step-father preparing himself to come to bed to her, asserting his unlawful desires toward her, and she finds courage to forbid him to enter her bed, she has perhaps expressed her refusal to consent to the unlawful cohabitation to as great an extent as the law will require, before holding the unnatural ravisher to the law's penalties.

It must be remembered that from early childhood, indicated by the ages of the sleeping children, this girl has been accustomed to behold in this assailant her only protector and guardian. She has been accustomed from her earliest childhood, not only herself to yield obedience, but to see all others in the domicile yield obedience to this man, who stood to her in the relation of a father, and her feelings of consternation may be imagined, when taking her hands and holding them, he told her if she told her mother he would whip her, and then placing his private parts in contact with her private parts, forced her.

This assailant was scarcely in a position to obtain the consent of his step-daughter; and if he, against her directions to the contrary, entered her bed and seized her hands and had

sexual intercourse with her against her consent, *by force,* the crime is complete.

Should *he* be permitted to shelter himself behind the circumstance that she made but little actual resistance, and no outcry, under circumstances, to her, so confusing and so intimidating? There he was, one in authority, standing over her. He had come stealthily back from this party on a predetermined errand. He had contrived to have her protectors, as against him, well out of the way, and was present announcing his lustful purpose, with full power to execute it against her will.

That she *felt* herself in his power, and took too much counsel of her fears, and her helplessness, is a matter that he cannot plead in extenuation of his crime. But it is objected that the words used do not prove penetration of her body. Penetration is essential to complete this crime, and if there is no penetration there is no rape. But what is essential to the proof of penetration? It is proved in this case that the prisoner, getting into bed with the object of his desires, held her hands, brought his private parts in contact with her private parts, and *forced her.* The word penetration is not used; neither is it used in the received definition of the crime of rape stated above, and to be found in all the authorities, nor is it used in the statute cited. While it is an essential element of the crime of rape, and without it there can be no rape, yet proof of the carnal knowledge of a female against her will by force, is proof of rape.

The words used by the prosecutrix can have no other signification than that under the narrated circumstances, the prisoner accomplished the sexual intercourse sought by him. But if there can be any doubt of this upon the evidence of the girl, the evidence of the witness, Collins, must settle the question of whether there was complete sexual intercourse. He testifies, and he is unimpeached, that the prisoner told him, when brought before him as a magistrate, upon the complaint

of the girl, that the girl was no kin to him, and he had sexual intercourse with her, and that he *wanted to be first.* This is an admission by the prisoner that he had sexual intercourse with the girl, and that so far as his knowledge went, she was a person of previous chaste character. The proof of the crime is thus rendered complete.

Witnesses are called to impeach the prosecutrix, but they are contradicted by others called by the Commonwealth, and the jury passed upon this conflict of testimony, which was their province, and their decision cannot be overruled on this point. The witness, Collins, is not impeached, and no such attempt is made.

We have not been unmindful in this case of that just observation by Lord Hale, "that it is an accusation easily made, hard to be proved, and still harder to be defended by one ever so innocent." The party injured is legally a competent witness; her credibility was left to the jury upon the circumstances of the case, which concur with her testimony. Whether she be a person of good fame; whether she made complaint of the injury as soon as practicable; whether her person or garments bore token of the offence, and the like; upon these questions the jury has passed in their verdict. There do not seem to be any safe grounds upon which the judgment in this case can be set aside.

The sexual intercourse, under the circumstances of this case, make out a case of rape, and the judgment of the county court of Giles county must be affirmed.

LEWIS, P., and RICHARDSON, J., dissented.

JUDGMENT AFFIRMED.