COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia


ANDREW HYE SOUNG LEE

MEMORANDUM OPINION[*] BY
v.      Record No. 0842-22-4        JUDGE LISA M. LORISH
JUNE 6, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Corinne J. Magee (The Magee Law Firm, PLLC, on brief), for
appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Andrew Hye Soung Lee appeals his conviction, following a jury trial, for rape, in violation

of Code § 18.2-61. Lee argues that the trial court abused its discretion when it failed to strike a

juror for cause and also that the evidence was insufficient to prove the element of force. We

disagree and affirm the conviction.

BACKGROUND[1]

*Voir Dire*

At the start of voir dire, the trial court asked the prospective jurors (the venire) several

background questions. The jurors generally indicated that they had no personal interest in the trial,

no knowledge about the alleged offense, that they had expressed no opinion about Lee's guilt or

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

[1] "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."
*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).

innocence, and that they were unaware of any bias or prejudice that would prevent them from serving impartially. The venire generally affirmed that Lee was presumed innocent, that he did not have to produce any evidence, and that the Commonwealth had to prove his guilt beyond a reasonable doubt. All the prospective jurors also confirmed that they knew of no reason why they could not be fair and impartial to the parties, and when asked if anyone knew of any personal, religious, or moral reasons that prevented them from serving, all answered in the negative.

Next the venire was asked if anyone had been a victim of sexual assault or if a close family member had been sexually assaulted. Prospective juror K.F.[2] stated in chambers that a babysitter had sexually assaulted her sister and that the abuse was not revealed until years later. K.F. explained that the disclosure was "very hard on [her] family because [her] mother blamed [her] father for it and it wasn't him." The trial court asked K.F. if that experience would impair her ability to be impartial. K.F. stated she did not "think it [would] affect [her] personal bias to convict or not to convict." She noted, however, it would "affect [her] personally." Lee's trial counsel asked K.F. to elaborate. K.F. stated that "I think I have some sort of PTSD from it and I get triggered very easily when I think about him and what my sister has had to deal with." When asked if some evidence might trigger her PTSD and interfere with her ability to be a juror, K.F. noted she came "to this with a clear head and a clear mind." She continued, "I also think that at the end of the day I might go home and I might think about it too much and it might upset me. But I don't think it would affect my ability to be impartial." Lee's trial attorney then asked the entire venire whether a person who reported being sexually assaulted should be believed simply because the person made a report. No one responded.

---

[2] We use initials to protect the privacy of the juror and the juror's family given the nature of the questioning.

Lee then moved to strike K.F. for cause. The trial court noted that K.F. stated multiple times "that she could be fair and impartial but that the consequence of sitting would be difficult." Given the court's observation of K.F.'s demeanor, the trial court found that her answers were honest given the circumstances and denied Lee's motion.[3]

*Evidence at Trial*

First, we recount the Commonwealth's evidence at trial. On September 4, 2021, M.W.M. met Lee on the online dating app Bumble. During the week that followed, the pair exchanged instant messages online, text messages, and Snapchats.[4] Eventually, M.W.M. and Lee agreed to meet in person on September 11, 2021.

M.W.M. picked up Lee near his dorm at George Mason University; she drove to a golf club and parked so that she and Lee could converse. While talking, Lee put his hand on M.W.M.'s leg and tried to kiss M.W.M. M.W.M. rebuffed Lee stating that she does not kiss on the first date. When Lee withdrew, M.W.M. noticed he had an erection.

M.W.M. told Lee that nothing was going to happen because she was menstruating. Lee responded, "Well, you cannot go through the front you can always go to the back." When M.W.M. did not laugh, Lee explained that he was only joking, but M.W.M. noted that she was uncomfortable. Later, Lee suggested they watch a movie in his dorm room. M.W.M. agreed, believing she and Lee were "on the same page."

Once in Lee's dorm room the pair sat on Lee's roommate's bed and began watching a movie on M.W.M.'s phone. While cuddling, M.W.M. could still feel Lee's erection. Believing Lee to be in pain, M.W.M. asked Lee if she could give him "a hand job or a blow job" but noted "that's it." Lee agreed.

---

[3] K.F. was ultimately not seated as a juror.

[4] Snapchat is an instant message application.

M.W.M. began to massage Lee's penis. Meanwhile, Lee tried to touch M.W.M.'s vulva. M.W.M. told Lee she did not want him to touch her because she was menstruating. Lee responded that he wanted her to feel good too, and M.W.M. testified that she "just went with it." Lee then tried to take off M.W.M.'s clothes, but M.W.M. declined. M.W.M. testified that she kept touching Lee and began performing fellatio, and was "trying to get it over with" so that they could finish the movie.

Lee then suggested "grinding." Although M.W.M. was unfamiliar with the act, she consented because she thought she might enjoy it. M.W.M. straddled Lee while he lay on his back and began to rub her fishnet stockings and underwear against Lee's penis. Lee stated that it felt "a little bit rough" so M.W.M. suggested Lee rip her stockings so that they could be moved aside. Lee, however, ripped them to the point that they were unwearable. M.W.M. then moved her underwear to the side so that her genitals were rubbing against Lee's penis.

As the couple moved, Lee's penis entered M.W.M.'s vagina. M.W.M. testified that it was painful and that she expressed her discomfort to Lee. Lee apologized noting that it was an accident. The couple continued their movement, and Lee's penis entered M.W.M.'s vagina twice more. Each time M.W.M. told Lee it was painful. When Lee's penis touched M.W.M.'s anus, she told him it was not working. Lee then suggested that they change positions.

M.W.M. voluntarily lay on her back while Lee straddled her. M.W.M. testified that Lee grabbed her hands, pinned them next to her head, and inserted his penis into her vagina. M.W.M. told Lee "no." Lee let go of M.W.M.'s wrists, but he did not move off her. M.W.M. then tried to push Lee off, but his entire body pressed against her. M.W.M. pleaded for Lee to stop but he kept moving. M.W.M. testified that it was very painful and that she started to hyperventilate.

Upon realizing M.W.M. was hyperventilating, Lee stopped moving and asked M.W.M. what happened. M.W.M. leapt off the bed to collect her things; Lee moved to the door and insisted

that they talk about what had just occurred. M.W.M. said she was fine and that she wanted to go home. Lee asked M.W.M. if she wanted him to walk her to her vehicle; M.W.M. declined. M.W.M. testified that she told Lee she was fine because she was scared and wanted to leave.

Eventually, M.W.M. found her way out of the building and to her car. There, she texted a friend about what had happened and simultaneously received text messages from Lee. Lee's text messages stated: "Hey I know what I did is wrong." He continued, "I was super lustful and u and I were so good so I went all da way."

Several hours later, M.W.M. went to Arlington Hospital. Because M.W.M. reported that she was sexually assaulted, she was sent to Fairfax to talk to a sexual assault nurse examiner (SANE).

The SANE, Ashleigh Daniel, performed an acute exam of M.W.M. on September 12, at 2:00 a.m. Daniel explained that an acute exam is an exam done within 120 hours of the sexual assault. Daniel noted that M.W.M. was subdued but became tearful when she described the sexual assault. During the genital exam Daniel noted that the fossa was red, but after a follow-up examination, later determined that there was no injury to the area. Finally, Daniel found three linear bruises on M.W.M.'s forearm. Daniel noted that a patient could have injuries with either consensual or nonconsensual sex and that she could not tell from visible injuries to genitalia whether a patient consented to sexual intercourse.

Two weeks later, M.W.M. reported the incident to police. M.W.M. explained that she delayed her reporting because she did not want to ruin Lee's life. Ultimately, she reported the incident because she could not sleep, and was anxious and scared of everything. Detective Thomas Bacigalupi was on call and arrived at the police station to talk with M.W.M. While her statement was being taken, he downloaded text messages from her phone.

Later that day, Detective Bacigalupi executed a search warrant of Lee's dorm room. At the completion of the search Lee agreed to speak with Detective Bacigalupi at the police station. Lee admitted that he accidentally penetrated M.W.M. with his penis, but M.W.M. never told him no or asked him to stop. Lee said that the sexual activity stopped when M.W.M. had a panic attack, and she then got dressed and left.

Several days later, Detective Bacigalupi and Detective David Baucom conducted a follow-up interview with Lee. In the interview, played for the jury, Lee admitted that his penis penetrated M.W.M. a couple of times while she straddled him, but he denied that she said no. Lee explained that he was "too heated" and that is why the inadvertent insertions occurred. He also admitted that when he straddled her, he held her hands near her head and his penis inadvertently entered her vagina. Lee stated that when M.W.M. pushed him away and began shaking, he immediately stopped and attempted to comfort her. He acknowledged that he was 6 feet, 2 inches tall and weighed 197 pounds. When asked if M.W.M. conveyed she did not want to have vaginal intercourse with him, Lee responded "most likely yes." He also admitted that his text reference that he "went all da way" meant vaginal intercourse.

At the close of the Commonwealth's evidence, Lee moved to strike. The trial court granted Lee's motion to strike as to the theory of rape by intimidation or threat but took the motion to strike relating to the use of force under advisement.

Lee then testified in his own defense. He admitted that he met M.W.M. through Bumble and that he communicated with her online before he met her. On September 11, M.W.M. picked him up and they drove to a "golf course or a club" where they talked for some time. Eventually, the pair decided to watch a movie in his dorm room. Thirty minutes into the movie, M.W.M. asked if Lee wanted fellatio and Lee consented. While M.W.M. performed fellatio, he massaged her breasts and M.W.M. removed her shirt and bra. Lee asked M.W.M. to "grind." M.W.M. agreed and

positioned herself astride him with her fishnet stockings and underwear on. Lee stated that he was uncomfortable because her fishnets were rubbing against his penis, so M.W.M. allowed him to rip her fishnet stockings. M.W.M. then moved her underwear aside so that his penis rubbed against her vagina.

Lee admitted that while M.W.M. rubbed against him, his penis entered her vagina and he testified that he immediately asked if she was ok. According to Lee, M.W.M. responded that she was "fine." They continued their activity, and Lee's penis entered M.W.M.'s vagina twice more. Lee testified that each time his penis entered M.W.M.'s vagina he asked her if she was ok and M.W.M. stated she was fine. Eventually, they decided to switch positions and Lee straddled M.W.M. while she lay on her back. Lee continued to press against M.W.M. while he held her hands above her head. He admitted that he "got heated" and his penis entered M.W.M.'s vagina again. This time, M.W.M. "was shaking everywhere," and he immediately withdrew his penis. Lee said that he tried to comfort M.W.M., but she insisted on leaving. Lee helped M.W.M. collect her things and walked her to the elevators.

On cross-examination, Lee admitted that he knew M.W.M. was menstruating and that she did not want to have vaginal intercourse with him. Lee acknowledged that M.W.M. had told him these things several times before and during the date. Lee also acknowledged that "all da way" meant vaginal sexual intercourse.

At the close of all the evidence, Lee renewed his motion to strike. The trial court again took his motion under advisement. The jury convicted Lee of rape.

Lee moved to set aside the verdict claiming, among other things, that a finding that "non-consent equals proof of force" for rape involved an impermissible shift in the burden of proof that violated due process. The trial court denied the motion to set aside the verdict as well as the

motion to strike that it had taken under advisement. The trial court sentenced Lee to five years of incarceration, with two years, six months suspended. Lee appeals.

ANALYSIS

I.

Lee asserts that the trial court erred in refusing to strike K.F. from the jury for cause. He argues that K.F. admitted she experiences PTSD because of her sister's sexual assault and that the condition was easily triggered when she thought about her sister's abuser and her sister's experience. Lee submits that K.F's reaction would have been easily triggered by the testimony here and she should have been struck for cause.

"The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012). "Every prospective juror must stand indifferent to the cause, 'and any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" *Id.* at 23 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 298 (1976)); *see also* Code § 8.01-358. "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Taylor*, 61 Va. App. at 23 (quoting *Breeden*, 217 Va. at 298).

We apply these principles "strictly," "and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Id.* "The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Id.* (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). "Thus, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61).

Because a trial judge gets the chance to see and hear each juror respond to questions posed during voir dire, the trial court "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61).

> Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal. Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion.

*Id.* at 23-24 (quoting *Lovos-Rivas*, 58 Va. App. at 61). In conducting our review on appeal, "we consider the juror's entire *voir dire*, not merely isolated statements." *Id.* at 24. Finally, "[w]e defer to the [trial] court's assessment of [a] juror's 'competency to serve impartially' because this finding was not plainly wrong or without evidence to support it." *Keepers v. Commonwealth*, 72 Va. App. 17, 44 (2020) (quoting *Garcia v. Commonwealth*, 60 Va. App. 262, 270 (2012)).

The record does not establish that K.F. held firm opinions of such "fixed character which repel[] the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (quoting *Slade v. Commonwealth*, 155 Va. 1009, 1106 (1931)). Considering the entire voir dire, K.F. conveyed she could be fair and impartial, was unaware of any bias or prejudices she may have, and knew of no personal, religious, or moral reasons that prevented her from serving on the jury.

When the prosecutor asked if anyone had a close family member who was a victim of sexual assault, K.F. disclosed that her sister was a victim. Although K.F. indicated that the topic would affect her personally, she repeatedly affirmed that the experience would not affect her ability to be impartial. The trial court found that given the nature of the case "the consequence of sitting would be difficult." That said, the trial court found that K.F. was honest about her

ability to be impartial. Because the record supports the trial court's determination that K.F. could serve as an impartial juror, we will not reverse the trial court's denial of the motion to strike K.F. for cause.

II.

Lee makes two distinct arguments in support of his second assignment of error. First, Lee argues that the presumption that "an act undertaken against a victim's will and without the victim's consent is an act undertaken by force" is an unconstitutional mandatory presumption. Second, Lee contends that the insertion of his penis into M.W.M.'s vagina was accomplished by surprise, not by force. We will address each argument in turn.

A.

Under Code § 18.2-61(A), sexual intercourse that is "accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person" is sufficient to constitute the offense of rape. It has long been the case that sexual intercourse "against the [complaining witness's] will" is sufficient proof that the act was undertaken "by force." *Jones v. Commonwealth*, 219 Va. 983, 986 (1979) ("To determine whether the element of force has been proved in the crime[] of . . . rape . . . the inquiry is whether the act or acts were effected with or without the victim's consent."); *Bailey v. Commonwealth*, 82 Va. 107, 111 (1886) ("Wherever there is a carnal connection, and no consent in fact . . . there is evidently, in the wrongful act itself, all the force which the law demands as an element of the crime.").

Lee's argument is cloaked in the language of "mandatory presumptions" and due process violations. But such a challenge has teeth only when a jury is instructed that if it finds particular facts it must find an element of the offense—relieving the Commonwealth of its burden to prove all elements of the offense. *See, e.g.*, *Francis v. Franklin*, 471 U.S. 307, 314 (1985) ("A

- 10 -

mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts."). Here the jury was not instructed it need presume anything. Instead, Lee simply disagrees with binding precedent in Virginia interpreting the elements of rape.

In any event, we agree with the Commonwealth that any mandatory presumption argument is waived because Lee assigned error only to sufficiency of the evidence, not the alleged due process violation. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court."). Lee challenges the trial court's denial of his motion to set aside the verdict "on the ground that there was insufficient evidence of force." As phrased, the assignment of error does not encompass Lee's argument on brief which maintains that Virginia case law creates an unconstitutional mandatory presumption by finding that an act taken against the victim's will and without her consent is an act undertaken with force.

B.

Lee next contends that the Commonwealth failed to prove an element of the crime—that the sexual penetration was by force. Instead, he argues the insertion of his penis was "by surprise."

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193

(2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

As discussed above, "[i]f any person has sexual intercourse with a complaining witness . . . and such act is accomplished . . . against the complaining witness's will, by force . . . he or she shall be guilty of rape." Code § 18.2-61(A). The element of force can be shown by a lack of consent alone. *See, e.g.*, *Jones*, 219 Va. at 986; *Bailey*, 82 Va. at 111. Therefore, if the victim did not consent, the use of force is shown by the act of non-consensual intercourse itself.

Because M.W.M. consented to some sexual acts, including lying on her back, Lee argues his weight on top of her body cannot constitute evidence of force. And he claims M.W.M. did not object to sexual penetration the first three times the tip of his penis entered her vagina and that when she did object it was only after the final time his penis accidentally entered her vagina and after he had already removed it. That said, Lee conceded at trial, and on brief, that M.W.M. told him she did not want sexual intercourse. He also conceded that his penis entered her vagina four separate times. In text messages he sent M.W.M. after the incident, Lee acknowledged that "what he did was wrong" but expressed that he was "lustful" and "went all da way." In an interview with detectives, Lee confirmed that "all da way" meant vaginal intercourse.

While Lee claims that M.W.M. did not say "no" after the sexual encounter began until after he had removed his penis following the final alleged accidental insertion in her vagina, the jury was entitled to credit M.W.M.'s testimony to the contrary. Indeed, M.W.M. testified that after each insertion she told him "no." She also told the jury that after penetrating her for the first time, Lee "apologized and said that it was an accident." The last time he penetrated her, M.W.M. explained that while she was lying on her back, Lee held her arms above her head,

- 12 -

inserted his penis, and used his body weight to pin her to the bed while he continued to press against her. She attempted to push Lee off but did not succeed. Hours after the incident, M.W.M. went to the hospital and reported that she had been sexually assaulted to Nurse Daniel. Nurse Daniel documented three linear bruises on M.W.M.'s left arm.

Witness credibility is a determination for the factfinder, and not one this Court will second-guess on appeal. *Foster v. Commonwealth*, 38 Va. App. 549, 554 (2002) ("A witness'[s] credibility and the weight accorded to his testimony are matters solely for the fact finder 'who has the opportunity to see and hear the witness[].'" (second alteration in original) (quoting *Commonwealth v. Taylor*, 256 Va. 514, 518 (1998))). Considering all the evidence, we find that a reasonable fact finder could conclude beyond a reasonable doubt that Lee used force to rape M.W.M.

## CONCLUSION

We find no basis to disturb the trial court's refusal to strike K.F. from the jury for cause. We also conclude that the evidence was sufficient to prove force and that Lee was guilty of rape. Accordingly, we affirm the trial court's judgment.

*Affirmed.*