COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia

ONDRIA SAMUEL HARDEMAN

                                    MEMORANDUM OPINION* BY
v.       Record No. 1768-22-2           JUDGE CLIFFORD L. ATHEY, JR.
                                        MAY 28, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Edward Tomko, III, Judge

Terry Driskill for appellant.

Victoria Johnson, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

A jury empaneled in the Circuit Court of the City of Hopewell ("trial court") convicted

Ondria Hardeman ("Hardeman") of aggravated sexual battery, contributing to the delinquency of a

minor, and two counts of assault and battery. Hardeman appeals from his aggravated sexual battery

conviction, alleging that "there was insufficient evidence to show force, threat[,] or intimidation"

pursuant to Code § 18.2-67.3(A)(4). We disagree and affirm the trial court's decision.

## I. BACKGROUND[1]

In May of 2021, Hardeman, who was 36 years old, moved into the home of his father, his

stepmother, and his stepsiblings, including C.H., a 15-year-old boy, and M.H., a 13-year-old girl.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Following "familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Blackwell v. Commonwealth*, 73 Va. App. 30, 40 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). This "include[es] any inferences the factfinder may reasonably have drawn from the facts proved." *Id.* at 44 (quoting *Hannon v. Commonwealth*, 68 Va. App. 87, 92 (2017)).

About a month later, Hardeman began "hanging out" with M.H. and C.H. at the local mall and in the family's garage. At trial, M.H. testified that while in the garage, Hardeman often spoke to her and her brother about "inappropriate" topics like smoking "blunts," drinking alcohol, and engaging in sexual relationships. While doing so, he also gave C.H. alcohol and cigarettes. During one discussion, M.H. testified that she heard Hardeman volunteer "that he would take [either child] to [their] boyfriend[] [or] girlfriend's house and [they] could have sex with them." Hardeman continued to involve the children in this "inappropriate sex talk" even after M.H. complained to Hardeman to stop.

M.H. also testified that Hardeman was physically violent towards her and her brother. She stated that Hardeman would "wrestle" with her though she was smaller and shorter than either Hardeman or her brother. While "wrestling," Hardeman would place her in a headlock in such a way that her "head was near his private parts . . . ." And during multiple wrestling sessions, Hardeman "grab[bed]" M.H.'s breast while they wrestled and "squeez[ed] it tight to make it hurt." Each time this happened, M.H. testified that she asked Hardeman to stop and also advised him that he was hurting her. After being confronted, Hardeman released M.H. and explained to her that he squeezed her breast only to demonstrate that the breast was a "pressure point for girls." On three separate occasions, C.H. also testified that he witnessed Hardeman's actions, and M.H. also stated that this behavior "happen[ed] a lot" and occurred where M.H.'s mother "couldn't see" or "hear [the] wrestling." M.H. noted as well that she saw Hardeman punch C.H. on one occasion to the point that he left a bruise on the child's face. And M.H. explained that Hardeman's violence towards C.H. only stopped after a family member confronted Hardeman about it.

M.H. also testified that on July 4, 2021, while she was alone in her mother's bedroom, Hardeman approached her from behind and grabbed her around the waist. She further testified that he "tr[ied] to walk [her] over to the bed" before she pushed him away and fled from the bedroom.

Later that same day, Hardeman told M.H. to take a blanket to his bedroom, and after she did so, he grabbed her face and "kind of tried to lean [sic] [M.H.] over to the bed." Although M.H. testified that she was able to escape, Hardeman's behavior persisted when later that evening he invited M.H. to play a computer game in his room. That night, when M.H. came into Hardeman's room to play on the computer, he seized her, removed her clothing, and penetrated her vagina with his penis.[2] Only after M.H. struggled with Hardeman and pleaded with him to stop did he permit M.H. to leave.

M.H. testified that after this incident in his bedroom Hardeman became more aggressive toward her. She stated that Hardeman began sneaking up behind her as she performed household tasks and rubbed his penis against her buttocks. She further testified that on another occasion, Hardeman rubbed her genital area through her bathing suit. When she tried to use the computer in Hardeman's room again, Hardeman attempted "sexual intercourse with [her]." When asked whether she thought to report Hardeman's increased aggression towards her, she said it would be "pointless to tell" the adults in her life about his actions. She thought reporting Hardeman "would also hurt [her] dad's feelings since he hadn't seen [Hardeman] since he was eight." She worried that her father would "get sick or have a heart attack or stroke because of all the stress" if she reported the abuse to him.

M.H. next stated to the trial court that there came a time when she and her mother moved to a different house following a violent altercation between her aunt, her mother, and Hardeman. While at that house, M.H. disclosed Hardeman's abuse through a letter to several family members. M.H. then testified that upon reading this letter, her mother reported Hardeman's abuse to law

---

[2] The Commonwealth introduced this evidence primarily in support of the carnal knowledge charge, but it was also used by the Commonwealth to show that Hardeman touched M.H. while "wrestling" with the "intent to sexually molest, arouse or gratify." Hardeman challenges his conviction only on the ground that there was insufficient evidence that he used force to touch M.H., waiving an intent-based challenge.

enforcement. As a result, Hardeman was indicted on three counts of aggravated sexual battery, one count of contributing to the delinquency of a minor, and one count of carnal knowledge.

At the conclusion of the Commonwealth's case-in-chief, Hardeman moved to strike the evidence regarding the three counts of aggravated sexual battery, claiming the Commonwealth did not prove any one of the "force, threat[,] or intimidation" elements. The trial court granted Hardeman's motion to strike as to the counts involving Hardeman touching M.H. through her bathing suit and placing his penis against her buttocks.[3] The trial court, however, overruled the motion to strike the aggravated sexual battery charge arising from Hardeman squeezing M.H.'s breast when they wrestled.

Testifying in his own defense, Hardeman admitted that he struck C.H. "eight times" starting from the time he began to live with the family, but he denied that he provided C.H. with cigarettes or alcohol. He also denied wrestling with M.H., grabbing her breast, or ever "brush[ing] up on [M.H.]." The Commonwealth subsequently entered Hardeman's two prior felony convictions into evidence on cross-examination. At the conclusion of all the evidence, Hardeman moved to strike the remaining charges and the trial court denied his motion.

The jury was instructed and following closing arguments, they retired to deliberate. The jury returned their verdicts convicting Hardeman on all the remaining charges except the carnal knowledge charge.[4] Hardeman then moved to set aside the aggravated sexual battery verdict "as being contrary to the law and the evidence," contending that the record contained insufficient evidence to show Hardeman acted with "force, threat[,] or intimidation." The trial court took the

---

[3] The trial court ruled that, because M.H. told Hardeman to stop, she was not intimidated, causing these counts to be reduced to simple assault and battery as the Commonwealth did not alternatively assert that these acts were done under force or threat.

[4] The jury deadlocked on the carnal knowledge charge, causing the trial court to declare a mistrial as to that charge.

motion to set aside under advisement and received additional briefing. In his brief, Hardeman

asserted that his aggravated sexual battery conviction should be set aside because the force alleged

by the Commonwealth was inherent in the touching itself, having occurred during the activity of

wrestling. The Commonwealth argued in its post-trial brief that the element of force was met and,

in the alternative, argued that the trial court erred in failing to find that the element of intimidation

was met. The trial court denied the motion to set aside the verdict, upholding the conviction. The

trial court rejected the Commonwealth's argument that there was sufficient evidence to prove that

Hardeman intimidated M.H. But it concluded that the Commonwealth's evidence satisfied the

element of force since Hardeman's wrestling conduct "wasn't a simple touching." Hardeman

appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is

presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support

it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting

*Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself

whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.*

(alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the

relevant question is whether '*any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting

*Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the

conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72

Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). However, to

the extent that resolving a sufficiency challenge requires statutory interpretation, that aspect of the analysis "presents a pure question of law and is accordingly subject to de novo review by this Court." *Washington v. Commonwealth*, 272 Va. 449, 455 (2006).

B. *The record contains sufficient evidence to convict Hardeman of using "force" to commit aggravated sexual battery.*

Hardeman contends that his conviction for aggravated sexual battery should be reversed because "[t]here is simply no evidence beyond the quantum of pressure" in the record that shows that he "overcame the will of the victim" under *Johnson v. Commonwealth*, 5 Va. App. 529, 534 (1988), *overruled by Robinson v. Commonwealth*, 70 Va. App. 509 (2019) (en banc). Instead, he contends that "surprise," instead of force, is what was used to accomplish the touching, thus failing to satisfy Code § 18.2-67.3(A)(4). We disagree.

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute."'" *Eley v. Commonwealth*, 70 Va. App. 158, 163 (2019) (alterations in original) (quoting *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (2013)). Thus, where the statutory language is clear we "must give the words their plain meaning." *Crislip v. Commonwealth*, 37 Va. App. 66, 71 (2001). This Court has previously held the term "force" in Code § 18.2-67.3(A)(4) to be "clear" and unambiguous. *Robinson*, 70 Va. App. at 516.

Aggravated sexual battery occurs when the "accused . . . sexually abuses the complaining witness, and" an aggravating factor occurs. Code § 18.2-67.3(A). One such aggravating factor is when the act was "accomplished against the will of the complaining witness by *force*, threat or intimidation." Code § 18.2-67.3(A)(4) (emphasis added). "The Code itself does not define force in the context of sexual offenses." *Nelson v. Commonwealth*, 73 Va. App. 617, 624 (2021). But as the General Assembly has declined to textually limit the term to "actual force," the

- 6 -

Commonwealth may prove a sexual battery was committed by force by introducing evidence that includes "both actual and constructive force." *Martin v. Commonwealth*, 272 Va. 31, 34 (2006). The evidence must show that the "force used by the defendant" was "sufficient to accomplish the act as well as to overcome the will of the victim." *Wactor v. Commonwealth*, 38 Va. App. 375, 381 (2002). In addition, "[t]o overcome the victim's will, the force must be 'sufficient to overcome [her] resistance . . . .'" *Id.* (all but first alteration in original) (quoting *Snyder v. Commonwealth*, 220 Va. 792, 796 (1980)). And to determine whether a victim's resistance has been overcome, we consider the "totality of the circumstances." *Nelson*, 73 Va. App. at 624.

Black's Law Dictionary defines "actual force" as "[f]orce consisting in a physical act." *Actual Force*, *Black's Law Dictionary* (11th ed. 2019). We construed actual force in *Johnson* to find that the actual force required for a violation of Code § 18.2-67.3(A)(4) involves "some force other than merely that force required to accomplish the unlawful [act]." 5 Va. App. at 534. There, the trial court had convicted the defendant where the evidence showed he battered a 14-year-old boy by holding the boy "real close to him" while touching his genitals. *Id.* at 531. But during the touching the boy "was awake and merely pretended to be asleep." *Id.* at 534. We reversed this conviction on the basis that the Commonwealth did not show the touching was done by force since it "was accomplished by surprise rather than by threat or intimidation." *Id.* This holding remained undisturbed for 31 years until we "reconsider[ed]" it in *Robinson*. 70 Va. App. at 516.

In *Robinson*, the victim met the defendant upon returning home. *Id.* at 512. After telling her, "[y]ou just woke me up," the defendant grabbed the victim's "breasts right behind [her] nipples and twisted as hard as he could." *Id.* She responded by "smack[ing] his hands away" and by telling "him to get off of her." *Id.* He finally let go "[a]bout maybe a minute later." *Id.* (alteration in original). The trial judge found the defendant guilty of sexual battery, reasoning

that "the evidence indicates that the requisite degree of force was applied" due to "the manner" the victim said "[Robinson] grabbed and held and twisted her breasts." *Id.* at 513 (alteration in original).

We agreed with the trial court's holding and found that the facts in *Robinson* involving the application of *actual* force satisfied the force element of Code § 18.2-67.4(A)(i). We reasoned that Robinson accomplished the touching "by force" because upon grabbing the victim's breasts he "twisted [them] as hard as he could"—and held on to them in that manner for about a minute. *Id.* at 517. Thus, as we are guided by *Robinson*, the "force" element in Code § 18.2-67.3(A)(4) can be satisfied by evidence of *actual force* separate from the initial touching itself that overcomes the victim's will. *Robinson*, 70 Va. App. at 516.[5]

Further, like other sexual offenses, aggravated sexual battery may also be proven solely through evidence of "constructive force." *Nelson*, 73 Va. App. at 625. A primary form of constructive force involves the absence of the victim's consent. *See Gonzales v. Commonwealth*, 45 Va. App. 375, 383 (2005) (en banc) ("[I]f the victim did not consent, the specific issue in the instant case, the use of force is shown by the act of non-consensual [sexual act] itself."). Our Supreme Court has provided that "in the context of sexual crimes, an act undertaken against a victim's will and without the victim's consent *is an act undertaken with force*." *Martin*, 272 Va. at 35 (emphasis added). And "[p]roof of the absence of legal consent provides '*all the force which the law demands* as an element of the crime.'" *Id.* (emphasis added) (quoting *Bailey v. Commonwealth*, 82 Va. 107, 111 (1886)). To do so, "[t]he

---

[5] Our conclusion is consistent with similar cases involving sexual crimes that also require proof of "force, threat or intimidation." *See, e.g.*, *Sabol v. Commonwealth*, 37 Va. App. 9, 17 (2001) (finding sufficient evidence of "force" for rape where the defendant pushed the victim down a hallway to the bedroom before initiating the conduct there); *Clark v. Commonwealth*, 30 Va. App. 406, 410 (1999) (finding sufficient evidence of "force" to support an aggravated sexual battery conviction where the defendant laid on top of the victim before sexually touching her).

prosecution does not need to prove 'positive resistance' by the victim." *Nelson*, 73 Va. App. at 625 (quoting *Jones v. Commonwealth*, 219 Va. 983, 986 (1979)). And alone "*[a] lack of consent* establishing constructive force *is adequate to prove the element of force* required to uphold the appellant's conviction for aggravated sexual battery." *Id.* at 626 (emphases added).

In addition to lack of consent, "[c]ircumstances supporting a finding of [constructive] force [also] include the victim's relationship to the defendant, the aggressive nature of the defendant's behavior, and the victim's fear during and after the crime." *Bondi v. Commonwealth*, 70 Va. App. 79, 89 (2019). The factfinder may also consider the crime's "time and place" and the "relative physical capabilities" of the victim and the perpetrator. *Wactor*, 38 Va. App. at 383.

Here, the record is replete with evidence of both actual and constructive force sufficient to support Hardeman's conviction for aggravated sexual battery. First, as in *Robinson*, the fact that Hardeman touched M.H.'s breast and then "squeez[ed] it tight to make it hurt" is evidence that he used actual force to accomplish the touching—through both the extent and duration of the squeezing of the breast. The *Robinson* Court found that the perpetrator used force to sexually batter the victim because he not only touched the victim's breasts but he also "twisted [them] as hard as he could"—and held onto them for about a minute. *See Robinson*, 70 Va. App. at 512. Its reasoning applies with full force here.[6] Hardeman's extended squeezing of M.H.'s breasts

_____

[6] At oral argument Hardeman attempted to distinguish *Robinson* by claiming that because the victim in *Robinson* was touched for around a minute to the point the victim had to "smack [his] hand away" that force was not used here to "overcome [M.H.'s] will" merely because Hardeman stopped each squeeze after M.H. asked him to stop. His argument is not persuasive.

Code § 18.2-67.3(A)(4)'s text does not require analyzing the duration and intensity of the touching in question to decide whether sufficient "force" existed. It does not textually require resistance. And our precedent does not either. *Nelson*, 73 Va. App. at 625. The provision's text plainly says that the act proscribed is "*accomplished against the will* of the complaining witness *by force, threat or intimidation*." Code § 18.2-67.3(A)(4) (emphases added). Thus, these

until they hurt was sufficient evidence of actual force. As evidenced by M.H.'s pleas to stop, Hardeman exerted force that went well beyond the touch inherent in wrestling. Thus, the record contains sufficient actual force evidence to convict Hardeman, in the form of Hardeman's squeezing of M.H.'s breast to the point she pled with him to stop.

Each time Hardeman squeezed M.H.'s breast, she asked him to stop because of the pain, showing that this squeezing was without her consent. As a result, under *Martin*, which we find dispositive here, this touching was "an act undertaken with force" that provided "'*all the force which the law demands* as an element of [aggravated sexual battery].'" 272 Va. at 35 (emphasis added) (quoting *Bailey*, 82 Va. at 111). But M.H.'s response to Hardeman's touch is not the only evidence of constructive force here.

Further, the parties, their family dynamics, and the context around Hardeman's actions also show he accomplished this touching by constructive force. For example, Hardeman was a *36-year-old man* "wrestling" a *13-year-old girl*. As such, the parties' "relative physical capabilities" strongly compel finding that Hardeman used constructive force to "overcome [M.H.]'s will." *Wactor*, 38 Va. App. at 383. Hardeman was also M.H.'s stepbrother, and he used that relationship against her in justifying his conduct, flaunting his relationship with M.H.'s father to prevent her from reporting his abuse. He also abused her brother in her presence, making her afraid to report Hardeman's abuse of C.H. because she feared that if her family did

---

considerations are merely a part of the totality of the circumstances analysis in determining whether force was used and none by themselves are factually dispositive.

By contrast, the duration or intensity of the touching comes into play when evaluating *constructive force*, as it is a consent-focused inquiry, as opposed to deciding whether *actual force* was used at all. *See, e.g.*, *Wactor*, 38 Va. App. at 382 (providing that the court may consider "the relative physical condition of the participants *and the degree of force manifested*" to decide whether force was used (emphasis added)).

not believe her that Hardeman would start beating her too.[7] In addition, the "time and place" of the wrestling also evinces the use of constructive force. M.H. testified that the wrestling occurred in areas where her mother "couldn't see" or "hear [the] wrestling." *See Wactor*, 38 Va. App. at 383. Finally, Hardeman's actions during the July 4, 2021 incidents and afterwards evince an "aggressive nature" toward M.H. *Bondi*, 70 Va. App. at 89. Hence, the record contains ample evidence of both actual and constructive force sufficient to support Hardeman's conviction for aggravated sexual battery.

"[F]orce generally requires proof of more than 'merely the force required to accomplish . . . the statutorily defined criminal acts.'" *Id.* at 88 (second alteration in original) (quoting *Sabol v. Commonwealth*, 37 Va. App. 9, 16 (2001)). Viewing the facts in the light most favorable to the Commonwealth, considering the totality of the circumstances and the facts arising therefrom, there was sufficient evidence of actual and constructive force to support Hardeman's conviction for aggravated sexual battery. Thus, we affirm his conviction.

## III. CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in finding the evidence of force in the record sufficient to support Hardeman's conviction. Therefore, we affirm its judgment.

*Affirmed.*

---

[7] In the alternative, the Commonwealth also asserts that the trial court's ruling could be justified under the "right-result-wrong-reason doctrine" because it claims there is evidence in the record suggesting that the conduct in question here arose because M.H. was *intimidated* by Hardeman instead of being *forced* by him, as either ground would support his conviction under Code § 18.2-67.3(A)(4). As we affirm Hardeman's conviction on the grounds that there is sufficient evidence of force in the record, we decline to address this argument in order to decide this case "on the best and narrowest grounds available." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).